# TUCKER *v.* BILLING.

APPORTIONABLE CONTRACT, EXTENSION OF CREDIT IN, NOT CANCELED BY BREACH.—T. entered into a contract to supply B. with lumber at certain prices, "payment to be made for twenty thousand feet as often as twenty-five thousand feet are delivered, and the balance to be paid at the end of the year." B. having made a breach by failing in one payment of the part of the purchase money stipulated for on delivery, T. sued for the full contract price: *Held*, that the provision for paying one fifth of the purchase price at the end of the year was an extension of credit to B., and the action therefor before the expiration of the term of credit was premature; that the contract was apportionable, and B.'s failure to make one payment for lumber delivered was no excuse for the refusal of T. to further deliver lumber according to its terms.

AN AGREEMENT OVER SEVERAL DISTINCT SUBJECT-MATTERS, not dependent upon each other, constitutes separate contracts, as if made at different times, in different instruments, and a breach of one by one of the contracting parties does not excuse non-performance of the others by the person not in default.

AFTER BREACH OF A CONTRACT, THE PARTY IN FAULT will not be permitted to treat the contract as existing for the purpose of being specifically performed by him, but the other party may treat the contract as existing only for the purpose of affording a remedy for its breach by suing for the contract price, or he may treat the contract as rescinded and sue upon a *quantum meruit*.

APPEALS from the third district court. The complaint in this case alleges: ".That on or about the eighteenth day of July, 1877, at the county of. Salt Lake, Utah territory, the said plaintiff made and entered into a contract with the said· defendant, · Frederick W. Billing, and one A. G. Hunter, whereby and wherein the said plaintiff. offered and agreed to deliver to the said Billing and Hunter all the lumber they might require, and not less than eighty thousand (80,000) feet, at the price of thirty-one dollars and fifty cents for each thousand feet so delivered; said lumber to be delivered by the plaintiff at the ore-house of the Flagstaff mine, near Alta City, or at such other place between said ore-house and a place known as the 'Red House,' on the Wasatch & Jordan Valley railroad, as the said Billing and Hunter might designate, they, the said Billing and Hunter, to give the plaintiff· reasonable notice of the size and quantities of the said lumber they might need; payment of the said lumber so delivered to be made by the said Billing and Hunter as follows, to wit: As often as twenty-five thousand (25,000) feet were delivered they were to pay to the plaintiff the price of twenty thousand (20,000) feet, at the rate above stipulated, the remainder of the price (one fifth) to be paid at the end of the present year (1877). The plaintiff, by and in said contract, further agreed to sell and deliver to the said Billing and Hunter all the slabs produced or to be thereafter produced at his saw-mill near said Alta City during the summer and fall season of the year 1877, at the price· of eight dollars and twelve and one half ($8.12½) cents for each cord of slabs so sold—the same to · be delivered and piled at the engine-house or ore-house of said Billing and Hunter, as they might select; the payment of said slabs to be made as follows, to wit: As often as the plaintiff delivered twenty-five (25) cords of the same he was to receive pay for twenty (20) of said cords at the price above stipulated, to wit, eight dollars and twelve and one half ($8.12½) cents per cord—the remainder of the price, one fifth (⅕) to be paid at the end of the present year (1877); the said slabs to be delivered as fast as produced, and the aforesaid lumber to be delivered before the first day of December, 1877. That the said Billing and Hunter, on the day and at the place first before mentioned, entered into said contract

with the plaintiff, and agreed to accept and buy said lumber and slabs, upon the terms above stated, and to pay plaintiff for the same the price above specified, at the times and in the manner aforesaid.

"That on or about the eighteenth (18th) day of July, 1877, and prior to the delivery of the lumber or slabs in said contract specified, the said A. G. Hunter transferred all his interest therein to the defendant Billing, who accepted the same with the knowledge and consent of this plaintiff, and became the sole party to said contract with plaintiff. That the plaintiff duly performed all the conditions of said contract, and between the date of said contract, to wit, the eighteenth (18th) day of July, 1877, and the eleventh (11th) day of November, 1877, inclusive, delivered to said Billing, under said contract, one hundred and thirty-one thousand four hundred and fifty-six (131,456) feet of lumber, the price of which, at the rate stipulated as aforesaid, was four thousand one hundred and forty and eighty-six one hundredths ($4,140.86) dollars, and also and further delivered to him, between the dates last aforesaid, eighty-nine and fifty-five sixty-fourths cords slabs, the price of which, at the rate stipulated in said contract, was seven hundred and thirty and ten one hundredths ($730.10) dollars.

"That the said defendant has wholly failed, neglected, and refused to perform the conditions and agreements by him undertaken to be performed and kept in said contract, and has not paid any of the money due to the plaintiff by the terms of the aforesaid contract, except the sum of two thousand seven hundred and sixteen and eighty-six one hundredths ($2,716.86) dollars, and that there is now due, owing, and unpaid from the defendant to the plaintiff the sum of two thousand one hundred and fifty-four and ten one hundredths ($2,154.10) dollars, with interest thereon at the rate of ten per cent per annum from the eleventh (11th) day of November, 1877.

"Wherefore plaintiff demands judgment for the sum of two thousand one hundred and fifty-four and ten one hundredths ($2,154.10) dollars, with interest at the rate of ten per cent per annum from the eleventh (11th) day of November, 1877, and his costs of action."

The answer, after admitting that he and one A. G. Hunter entered into the contract set out in the complaint, denies all the allegations of performance on the part of the plaintiff, or that there is anything due the plaintiff on the contracts, and proceeds:

"The said defendant, further answering said complaint, by way of counter-claim alleges, that on the eighteenth day of July, A. D. 1877, the said defendant and one A. G. Hunter entered into a contract with the plaintiff—which contract is in the words and figures following, to wit:

"'ALTA, UTAH, July 18, 1877.

"'To A. G. HUNTER and F. W. BILLING, Flagstaff Mine.

"'I hereby offer to supply you with all the lumber you may require this year, for the price of thirty-one and fifty one-hundredths ($31.50) dollars per thousand feet, delivered at your present ore-house of your Flagstaff mine, or at such other place or point between your ore-house and the Red House on the W. & J. V. R. R. as you may designate, you to give me reasonable notice of the sizes and quantities of lumber you need. Payment to be made as often as twenty-five (25) thousand feet are delivered, for twenty thousand (20,000) feet, and the balance at end of year.

"'I also offer to sell you all the slabs produced or to be hereafter produced at my saw-mill this season, for the price of eight dollars and twelve and one half cents per cord, delivered and piled at your present engine-house or ore-house. Payment to be made as often as twenty-five (25) cords are delivered, and the balance at end of year.

"'The slabs to be delivered as fast as produced, and the lumber before December 1, A. D. 1877.

"'The lumber to be not less than eighty thousand (80,000) feet or upward, as you may require.

"'July 18, 1877.                          JAMES TUCKER.'

"'We hereby accept the foregoing offer.

"'HUNTER & BILLINGS.'

"That on or about the eighteenth day of July, A. D. 1877, said A. G. Hunter assigned and transferred all his interest in said contract to this defendant, with the knowledge and con-

sent of said plaintiff; that the lumber and slabs in said complaint described, and which were agreed to be delivered by plaintiff, as in said contract specified, were to be used in timbering the Flagstaff mine—all which the plaintiff well knew; that the defendant duly performed all the conditions of said contract on his part; that the plaintiff entered upon the performance of said contract, and delivered lumber and slabs as in the complaint set forth.

"That on or about the —— day of November, A. D. 1877, defendant required of plaintiff to deliver at the place specified in said complaint twenty-two thousand (22,000) feet of lumber, at the same time giving plaintiff reasonable notice of the sizes of said lumber. That to deliver any part thereof, except six thousand (6,000) feet, the plaintiff has wholly failed and refused. That plaintiff during the season manufactured at his said mill slabs to the amount of ninety cords more than he has delivered to defendant under said contract, which ninety cords he has wholly failed and refuses to deliver under said contract, or at all, although often requested. That defendant, by reason of plaintiff's said failure and refusal to deliver said lumber, has been unable to get lumber delivered at the place specified in said contract at any less sum than forty-five dollars per thousand feet, and that he has been unable to get slabs at all, in the market in the neighborhood of said mine, or in any market within a practicable distance of said mine, or otherwise, and that he has been compelled in timbering said mine to use for the purpose for which said slabs were to be used, and as a substitute for such slabs, lumber of the value of forty-five dollars per thousand feet, one thousand feet of which lumber equaling only one cord of such slabs, for the said purpose—all of which facts were well known to the plaintiff; that said failure of said plaintiff to deliver said lumber and slabs has been a great injury to defendant, and to his damage in the sum of three thousand four hundred and thirty-four dollars and seventy-five cents; wherefore said defendant demands judgment against said plaintiff for the sum of one thousand two hundred and eighty dollars, and for his costs."

By consent of the parties, the case was tried before a

referee. The following is the report of his findings of fact and conclusions of law:

### FINDINGS OF FACT.

1. That said plaintiff and the said defendant with one Hunter entered into the written contract stated in substance in the complaint herein, and in full in the answer, and that defendant was subsequently subrogated to all the rights and liabilities of himself and said Hunter thereunder.

2. That up to and including the eleventh day of November, 1877, said plaintiff had done and performed all things on his part required to be done by said contract, and had then delivered to defendant

131,456 feet of lumber, at $31.50 per M., amounting to.................................... $4,140 86
and 89$\frac{55}{64}$ cords of slabs, at $8.12$\frac{1}{2}$ per cord, amounting to........................... 730 10

Total.......................................... $4,870 96
On which had been paid..................... 2,716 86

Leaving unpaid............................. $2,154 10

3. That of said amount unpaid, the sum of six hundred and thirty dollars, with interest at legal rate, from the eighth day of November, 1877, was due and payable at the time of the beginning of this action; that the balance of said amount unpaid, being one thousand five hundred and twenty-four dollars and ten cents, became due on the first day of January, A. D. 1878, after the beginning of this action.

4. That said contract was first broken by defendant in refusing to pay four fifths of the price of twenty-five thousand feet of lumber, delivered on and previous to the sixth of November, 1877, that said breach was the ground and reason of the refusal of plaintiff to deliver lumber and slabs subsequent to said eleventh day of November, 1877.

5. The plaintiff did not deliver to defendant all the slabs made at plaintiff's mill in November, 1877 ; that the amount so made and not delivered was forty cords, and the same were worth at Flagstaff mine, in December, 1877, thirteen dollars per cord.

6. Subsequent to the breach of the contract by defendant,

and in the month of November, 1877, defendant demanded of plaintiff twenty-two (22) thousand feet of lumber, specifying sizes thereof, and plaintiff refused to deliver the same; that the same was worth at Flagstaff mine, in December, 1877, forty-three dollars per thousand feet.

### CONCLUSIONS OF LAW.

1. The neglect and refusal of defendant to pay the amount due on the sixth of November, 1877, to plaintiff was a legal justification to plaintiff in his refusal to deliver lumber or slabs to defendant subsequent to that time, and bars defendant from recovery of any damages for such non-delivery.

2. Plaintiff is entitled to judgment in this action for the sum of six hundred and thirty dollars, and interest at ten per cent per annum from November 8, 1877, thereon, and costs of suit, with a provision in said judgment that the same is without prejudice to another suit for the sum of one thousand five hundred and twenty-four dollars, which became due January 1, 1878, but is included in the sum mentioned in the complaint herein. · · · · ·

On the coming in of the report, it was confirmed, and judgment entered in accordance therewith.

*Tilford & Hagan and J. S. Boreman,* for the plaintiff.

The plaintiff claims that the defendant having broken the contract, he (plaintiff) was entitled to judgment for the whole amount of the price of the lumber and slabs, and was not compelled to wait until the expiration of the year: *Philips et al.* v. *Seymour et al.,* 91 U. S. 646; *Cole* v. *Cleovada,* 4 Col. 17; *Hale* v. *Trout,* 35 Cal. 229; Bishop on Contracts, secs. 677, 690, 692.

One party may deem the contract rescinded if facts show its abandonment by the other party, and the party not in fault may recover the stipulated price: See above cases; *Dubois* v. *Delaware & H. C. Co.,* 4 Wend. 285.

After breach, the party in fault must not be permitted to treat the contract as still existing, for the purposes of being performed by him specifically. But the other party may, if he please, consider it existing only for the purpose of giving

remedy for the breach: *Girard* v. *Taggart,* 5 Serg. & R. 19 (33).

*Sutherland & McBride,* for the defendant.

The plaintiff is not entitled to a larger judgment than he recovered below.

The plaintiff brought the action on the defendant's special promise to pay money at different times. He can not recover except in accordance with that promise; that is, for so much as was due and in arrear when the suit was brought, and for that amount he obtained judgment in the court below.

This suit was commenced on the twentieth of December, 1877, and the moneys which the plaintiff by this appeal alleges were erroneously excluded from the judgment became due on the thirty-first of December, 1877.

There was an agreement by the defendant to make a series of payments. Next to the last payment was not made, and the plaintiff insists that in consequence of that default in November, the defendant's promise as to the last payment ceased to be a promise to pay on the thirty-first of December, and became a promise to pay immediately on the happening of the default in November.

Until courts obtain power to make contracts for parties, they will continue to enforce them as made.

The court below erred in refusing to allow the defendant's counter-claim.

It was disallowed on the ground that by the defendant's default in making payments on deliveries in November, the plaintiff rightfully exercised an election to discharge himself from the performance of the remainder of the contract.

The plaintiff had no such election. The contract was apportionable, and each delivery in parcels of the quantity mentioned in the contract constitutes an independent and severable part. After a delivery of any such parcel the title would pass, and thereafter, as to that parcel, there could be no rescission. Thereupon the plaintiff would become merely creditor for moneys due therefor, and all his rights as vendor would cease: Benjamin on Sales, sec. 764; 2 Parsons on Contracts, 520.

In a contract of such integral parts, where a severable part

of the consideration on one side goes only to a severable part on the other, the stipulations are independent: Benjamin on Sales, sec. 562; 2 Parsons on Contracts, 520–527.

As to each parcel, delivery and payment of four fifths of the purchase price were to be concurrent acts, the vendor had a right to retain the parcel for that money. That right of retainer was a lien—not a right to put an end to the contract. It is of the nature of the right of stoppage *in transitu*: *Newhall* v.*Vargas,* 15 Me. 314; Benjamin on Sales, secs. 764–772; *Vapley* v. *Oakley,* 16 Q. B. 941; *Griffith* v. *Perry,* 1 El. & El. 680; *Ex parte Chambers,* 4 Eng. Com. L. 903; 1 Smith's Lead. Cas., pt. 2, 1115; 1 Parsons on Contracts, 595.

EMERSON, J.:

From the judgment in this case both parties have appealed. On the findings the plaintiff seeks to obtain a larger judgment; the defendant to reduce the judgment by the allowance of his counter-claim.

Assuming that the default mentioned in the findings justified the plaintiff in refusing to go on in the delivery under it, he had his election to treat the contract as rescinded, and recover, on a *quantum meruit,* the value of the materials already furnished, or sue upon the agreement and recover for the amount furnished according to the contract, and for the loss of profits, if any, he had sustained by the interruption: *Jones* v. *Judd,* 4 N. Y. 414.

From the absence of any averment in the complaint, in the case at bar, of the value of the materials furnished, it is plain that the suit is not upon an implied promise, but the whole frame of it shows that it is upon the contract: *Cox* v. *McLaughlin,* 54 Cal. 605.

If there has been such a breach as to justify the plaintiff in declaring the contract at an end, while the defendant can not treat it in existence for the purpose of being by him specifically performed, yet the plaintiff may, if he please, consider it existing only for the purpose of giving a remedy for the breach: *Hale* v. *Trout,* 35 Cal. 229, and cases cited.

The plaintiff can not recover in this action for the payments made due by the terms of the contract at the end of the year, the suit having been commenced before that time.

The stipulation in the contract with reference to the one fifth payment was a term of credit given by the plaintiff to the defendant, and an action for the recovery thereof can not be maintained before that term has expired: *Girard* v. *Tagyart*, 5 Serg. & R. 19.

The error complained of on the part of the defendant is in refusing to allow his counter-claim. It was disallowed on the grounds that by the default of the defendant in refusing to pay one of the installments due on the delivery of lumber, the contract was first broken by him, and the finding states "that said breach was the ground and reason of the refusal of plaintiff to deliver lumber and slabs" subsequent thereto.

The conclusion of law was that the neglect and refusal to pay the amount due for the lumber "was a legal justification to plaintiff in his refusal to deliver lumber or slabs to defendant subsequent to that time, and bars defendant from recovery of any damages for such non-delivery."

The defendant claims that this conclusion of law does not follow from the finding, that the contract is apportionable.

By a reference to the contract itself, it will be seen that it contains at least two separate and distinct subjects, the one in no wise dependent upon the other. One is for the delivery of lumber upon certain terms and conditions, and the other for the delivery of slabs. The latter is as separate and distinct from the former as though it had been made at another time and by a separate instrument: 2 Parsons on Contracts, 517.

The refusal to pay any installment due on the delivery of lumber is no legal justification for the non-delivery of the slabs, and does not bar the defendant from the recovery of damages for its non-delivery. This counter-claim should have been allowed.

Another point raised by the defendant is, that the conclusion that the neglect and refusal of the defendant to pay the installment due on the lumber at the time of the alleged breach was a legal justification for plaintiff in refusing to deliver lumber subsequent to that time, is not supported by the findings.

We are of the opinion that the position taken by the de-

fendant is correct, and is supported both in reason and by authority.

The parties undoubtedly could have made the payment of any installment a condition precedent to a future delivery, and the non-payment of any such installment such a substantial violation of the contract as to authorize the other party to abandon it. But they have not; nor can it be inferred from the language used.

The case of *Palm et al.* v. *The Ohio and Mississippi Railroad Company*, 18 Ill. 219, which is quoted from and approved by the supreme court of California, in *Cox* v. *McLaughlin*, 54 Cal. 605, is very strong authority upon this point, to which many cases, besides those referred to in the brief of defendant's counsel, might be added.

The case of *Hale* v. *Trout*, 35 Cal. 229, which is cited by counsel for plaintiff in opposition to this doctrine, is not a case in point. In that case, " the defendants notified the plaintiffs that they would not receive or pay for any more lumber under the agreement, as they believed the plaintiffs had broken said agreement, and that they, defendants, would hold said agreement at an end." Here was a total abandonment of the whole contract, which would unquestionably authorize the plaintiffs to so treat it themselves. The language used by the court in deciding that case, and which is relied upon by counsel for plaintiff here, was used in view of the above state of facts, and to answer and negative the proposition of the defendants, that notwithstanding this total abandonment on their part, the plaintiffs were bound to tender the remaining portion of the lumber called for by the contract.

The case of *Phillips and Colby Construction Co.* v. *Seymour et al.*, 91 U. S. 646, is also relied upon by plaintiffs as very strong authority in their favor. At first glance, and disconnected from the facts of the case, and the point under discussion, this would seem to be so. The whole argument of counsel is based upon the following expression in the opinion of the court in that case: "Plaintiffs here had already performed, and the defendant failed to do its corresponding duty under the contract; and defendant having defaulted

on a payment due, plaintiffs are not required to go on at the hazard of further loss."

This language was used in deciding the point raised that the complaint was fatally defective because it did not aver that the plaintiffs were ready, willing, and able to perform their covenants; and the court say that was different from a case where plaintiffs have done nothing, and were required to put the defendant in default by offering to perform, or showing a readiness to perform, and then follows the language quoted. In the statement of the case the court say that the contract, which seems to have been before them, but not copied in the case, was drawn with "minuteness of detail" usual in such cases; and as no question was made upon the right of the plaintiffs to declare the contract abandoned, it is not a violent presumption to say that, in all probability, in a contract involving so large an expenditure of money, the right to so treat it was expressly provided for. In that case, the court say: "We are only answering the argument that the plaintiffs have lost all right to sue on the contract by their failure to complete the sections in the times named."

The questions raised in this case were neither raised nor decided in that. To give the language used in the case referred to the force and effect contended for by the plaintiff would in effect overrule the whole current of authority upon this question.

We are also referred to the case of *Withers* v. *Reynolds*, 2 Barn. & Adol. 882. That case was *assumpsit* for not delivering straw according to the following agreement: " John Reynolds undertakes to supply Joseph Withers with wheat straw, delivered at his premises until the twenty-fourth of June, 1830, at the sum of thirty-three shillings per load of thirty-six trusses, to be delivered at the rate of three loads in a fortnight; and the said J. W. agrees to pay the said J. R. thirty-three shillings per load for each load so delivered," etc. It appeared that the plaintiff had refused to pay for the straw *upon delivery*, and it was contended that he was not bound to do so, and that as no time was named for the payment, he might defer it till the expiration of the contract, or that, at all events, the promises to deliver the straw and to pay for it were independent, and should be enforced by cross-actions.

But the court held that he had a right to be paid *toties quoties* on the delivery of each load, and the plaintiff's refusal to do so gave him a right to rescind the contract.

In deciding that case, Patterson, J., says: " If the plaintiff had merely failed to pay for any particular load, that of itself might not have been an excuse to the defendant for delivering no more straw; but the plaintiff here expressly refuses to pay for the loads as delivered; the defendant, therefore, is not liable for ceasing to perform his part of the contract. In commenting on this case, in *Franklin* v. *Miller*, 4 Ad. & El. 599, Coleridge, J., says: " The rule is, that in rescinding, as in making contracts, both parties must concur. In *Withers* v. *Reynolds*, each load of straw was to be paid for on delivery. When the plaintiff said that he would not pay for his loads on delivery, that was a *total* failure, and the plaintiff was no longer bound to deliver. In such a case, it may be taken that the party refusing has abandoned the contract."

The facts of the case, and reasoning of the court in *Withers* v. *Reynolds*, make it an authority against the plaintiff in this case.

The judgment of the court below is reversed, with costs of this appeal against the plaintiff, and the cause is remanded to the third district court, with instructions to proceed in accordance with this opinion.

HUNTER, C. J., and TWISS, J., concurred.