St. Regis Paper Company, Appellant, v. The Santa Clara Lumber Company, Respondent, Impleaded with Another.

Contract — When Contract May Be Enforced by Action for Specific Performance after Attempted Rescission Thereof. Where it is provided, in a contract for the sale and delivery of a designated quantity of pulp wood a year, for a certain period of years, at a specified price per cord, that the vender should commence to cut the wood at a specified time each year for the following season's supply, and that the vendee should make such advances to the vender as it might

request during the progress of the work, but not more than approximately the cost of the work done, the balance of the purchase price to be paid at a specified time after the delivery of the wood to the vendee, and the vendee, from time to time, at the demand of the vender, advanced various sums until they aggregated an amount which the vendee believed and claimed was sufficient to comply with the contract, but which the vender claimed was insufficient and notified the vendee that the contract would be rescinded unless requests for further advances were complied with more promptly; the vender cannot, without other and more definite notice, and while negotiations for an arbitration of the differences between them were pending, during which time it accepted further advances from the vendee, return the moneys advanced and rescind the contract; and the vendee, having refused to accept the advances returned by the vender, and having insisted that the contract must be fulfilled, may maintain an action in equity for the specific performance thereof.

*St. Regis Paper Co. v. Santa Clara Lumber Co.,* 105 App. Div. 341, reversed.

(Argued June 15, 1906; decided October 2, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 16, 1905, affirming a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Elon R. Brown* and *Henry Purcell* for appellant. The court below erred in its interpretation as to advances. (1 Jarman on Wills, 532.) The defendant could not rescind the contract at a time when it was itself in the wrong by demanding more money for advances than the cost of the work done. (*Wright* v. *Reusens,* 133 N. Y. 298; *Graf* v. *Self,* 109 N. Y. 369; *Ellis* v. *Hoskins,* 14 Johns. 363; *Hatten* v. *John,* 83 Penn. St. 219; *Webb* v. *Stone,* 24 N. H. 288; *Stewart* v. *Mary,* 7 Ill. App. 508; *Myers* v. *Gross,* 59 Ill. 436; *Burris* v. *Shrewsbury Park, etc., Co.,* 55 Mo. App. 381; *Grandy* v. *McCleese,* 2 Jones Law, 142; 64 Am. Dec. 574.) The trial court overlooked the bearing and force of the provision for arbitration on the construction of the contract and upon the relations of the parties during its performance. It was an effective covenant to prevent a complete loss of the contract

under circumstances like those disclosed in this action. (*D. C. Co. v. P. C. Co.*, 50 N. Y. 250; *Nat. Cont. Co. v. H. W. Co.*, 170 N. Y. 439; *Haggart v. Morgan*, 5 N. Y. 422; *Davenport v. L. I. Co.*, 10 Daly, 535; *Viney v. Bignold*, L. R. [20 Q. B. Div.] 172.) The doctrine of rescission of contracts by one party for failure of the other party to comply with a condition, has no application as a rule of law to this case. (*Cox v. Stokes*, 156 N. Y. 491; *Nichols v. S. S. Co.*, 137 N. Y. 471; Benj. on Sales [7th ed.], 578, § 593; *L. S. R. R. Co. v. Richards*, 30 L. R. A. 45; *Dubois v. D. & H. C. Co.*, 4 Wend. 285; *Norrington v. Wright*, 115 U. S. 188.) The question of the right of rescission under the facts of this case is one of equity and not of law, and a court of equity will not suffer the defendant to rescind. (*Painter v. Newby*, 11 Ha. 26; *Nelthorpe v. Holgate*, 1 Coll. 203; *Hoy v. Smythies*, 22 Beav. 510; *Webb v. Hughes*, L. R. [10 Eq.] 218; Fry on Spec. Perf. § 1416.) Whether the doctrine of rescission of contracts be considered from the point of view of law or equity there was a substantial performance, and trivialities are not available to destroy great interests. (*Woodward v. Fuller*, 80 N. Y. 312; *Van Clief v. Van Vechten*, 130 N. Y. 571; *Crouch v. Gutman*, 134 N. Y. 45; *Miller v. Benjamin*, 142 N. Y. 613; *Ringle v. Wallis Iron Works*, 149 N. Y. 439; *Spence v. Ham*, 163 N. Y. 220.)

*George R. Malby* and *Henry W. Jessup* for respondent. The defendant was justified in demanding these advances. (*Chase v. Ewing*, 51 Barb. 597; *Cooper v. Cooper*, L. R. [8 Ch. App.] 813; *L. P. Co. v. Buckhardt*, 97 U. S. 117; *Vail v. Vail*, 10 Barb. 69.) The lumber company was justified in rescinding the contract sought to be specifically enforced for the breach of the covenant to make "advances." (*Waterman v. Van Ewen*, 2 Abb. Pr. 364; *Payton v. Wight*, 2 Hilt. 77; *Watts v. Rogers*, 2 Abb. Pr. 261; *Mansfield v. N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205; *Burling v. King*, 66 Barb. 633; *Lewis v. Andrews*, 127 N. Y. 673; *Mitchell v. Halheimer*, 56 Hun, 416; *Show v.*

*L. T. R. Co.,* 3 P. & W. 445; *Preston* v. *Finney,* 2 W. & S. 53; *McCreary* v. *Green,* 38 Mich. 172.)

Cullen, Ch. J.   This action was brought for the specific performance of a contract whereby the defendant agreed to cut and deliver to the plaintiff from eleven to thirteen thousand cords of pulp wood a year from a large tract of wild lands in the Adirondacks owned by the defendants, during the term of ten years, at the price of nine dollars a cord, with the privilege to the plaintiff to obtain a renewal of the contract for an additional term of ten years at twelve dollars per cord.   The case has been before this court on a previous appeal and is reported in 173 New York (p. 149).   In that report will be found a statement of the parts of the contract material to this controversy.   On the former appeal this court, reversing the decisions of the courts below, held that the contract was one the performance of which a court of equity could properly enforce.   After our decision the case was tried on its merits and judgment was rendered by the trial court in favor of the defendant on the ground that the plaintiff had made default in the performance of that provision of the contract whereby the plaintiff agreed to make advances to the defendant for the cost of cutting and getting out the wood.   The provision is as follows: " Party of the first part (defendant) shall commence to cut wood on or about the 15th day of August of each year for the following season's supply.   Party of the second part (plaintiff) shall make such advances of money to party of the first part as it may request during the progress of the work, but party of the second part need not advance more than approximately the cost of the work done.   Payment for the said wood shall be made by the party of the second part to the party of the first part on the 15th day of each month for the wood delivered during the next preceding calendar month, after first deducting from the aggregate of the purchase price of the said wood one-tenth of the advances made upon that season's operations until such advances have been repaid."   The judgment of the Special Term was

affirmed by the Appellate Division by a divided court, and from the judgment of affirmance this appeal is taken.

The contract, dated the 29th day of August, 1899, was executed by the parties about the first of October in that year. For some time prior to the execution of the contract, however, the parties had been in negotiation concerning it, and during that interval, in contemplation of the contract, the defendant had built roads, constructed permanent camps and incurred expenses for various items necessary for the prosecution of the work. Under the contract the wood was to be delivered to the plaintiff at any point, the expense of the transportation to which should not exceed the cost of the transportation from Tupper Lake Junction to Watertown, New York, and the delivery was to commence on or about the first day of June in each year. The ordinary method of taking out wood was to cut it and haul it to the streams during the winter season, whence the next spring it was floated to the point of delivery. No deliveries would be, therefore, made to the plaintiff till June, 1900. On October 7th the defendant demanded the sum of $2,500 on account of expenses already incurred by it, with which demand the plaintiff complied on October 18th. On October 26th the defendant demanded the sum of $5,000 on account and on November 17th an additional sum of $5,000. On account of these two demands the plaintiff, on December 5th, paid the sum of $7,500. Now, while the whole controversy and the decision of the court below proceed on the failure of the plaintiff to properly respond to the defendant's demands for advances, it would be impracticable to give within the limits of an opinion even an abstract of the details of the correspondence between the parties. It is sufficient to say that from October 26th, 1899, to March 24th following, the defendant made repeated demands for advances while the plaintiff insisted that the advances asked for by the defendant were largely in excess of those ordinarily made for the purpose of taking pulp wood from the forest. On March 24th, 1900, which was the date of the last demand by the defendant prior

to its notification to the plaintiff that the contract was rescinded by it, the account between the parties, as found by the trial court, stood as follows: The defendant had expended $37,132.80, the plaintiff had advanced the defendant the sum of $25,000. On March 24th the defendant sent to the plaintiff the following letter:

"Malone, N. Y., *March 24th*, 1900.

"The St. Regis Paper Co., Watertown, N. Y.:

"Dear Sirs.— In response to my notice to you some time since you sent me check for $5,000 on the Santa Clara Lumber Co. pulp-wood contract, which I at once forwarded to the company in New York. I have to-day received a letter from the company, saying that they have received $25,000, which was $12,500 short of the actual cost of the wood in its present condition, and they request me to ask you to remit at least $5,000 more; that the annoyance that they experience in getting these advances is so great that they feel very much disinclined to continue trying to fulfill the contract on their part unless the advances can be more promptly made. Hoping that you will remit at least $5,000 I remain,

"Very respectfully yours,

"JOHN P. BADGER."

To which the plaintiff made this reply:

"Watertown, N. Y., *March* 26, 1900.

"John P. Badger. Esq., Malone, N. Y.:

"Dear Sir.— Your favor of the 24th inst. at hand and noted. We have advanced the Santa Clara Lumber Co. $2 per cord upon the quantity of pulp wood which they claim to have cut, and we have advanced this amount promptly upon receiving their several requests. As we have already explained to you, this is the amount which is ordinarily advanced to cover the cost of pulp wood delivered to the stream. We understand that the Santa Clara Lumber Co. have spent an unusual amount of money this year in establishing permanent camps and roads with a view of reducing the expense of maintenance in the future. We also understand

that they have been lumbering upon their own account. We could hardly be expected to share in unusual expenses, and in view of the fact that they are conducting extensive operations of their own, it seems to us the only way we can arrive at the amount to advance is to take the customary amount. As we have heretofore said to you, however, the matter is merely one of interest, and we have suggested a friendly arbitration. You have consented to the arbitration, but, nevertheless, continue to make further requests for additional advances.

"Very truly yours,

"G. C. SHERMAN, *Treas.*"

Nothing further passed till April 12th, when the defendant notified the plaintiff that on account of the latter's failure to make advances to the extent of the cost of work done the contract was rescinded, and at the same time sent to the plaintiff a certified check for $25,344.79, the amount advanced by it with interest. It appears that at this time pulp wood had appreciated in price, and the defendant had made a contract for the sale of its wood to other parties on more favorable terms. The plaintiff refused to receive the check and wrote the defendant insisting that the contract still continued in force, and thereupon the plaintiff brought this action for its specific performance.

The learned trial court found that the plaintiff failed and refused to "advance the cost of the work as requested by the defendant or any fair approximation thereof. That the defendant repeatedly notified the plaintiff of its intention to rescind the contract in case its requests were not complied with. * * * That the plaintiff did not make the advances, as requested, for approximately the cost of the work done and that, with knowledge of the cost and of the terms of the contract and with notice of the intention of the defendant to rescind, if its requests were not complied with, deliberately and intentionally refused and neglected to make such advances, and that such refusal and neglect was not caused by any inadvertence or by any misunderstanding of the facts." If the testimony in any aspect justified this finding of the trial court, it is a

complete answer to this appeal, for equity will not enforce a contract at the instance of a party who has deliberately and intentionally neglected and refused to comply with its requirements. But we think that there is no evidence to support this finding. Granting, as we must, for the trial court has so found, the fact that the advances made by the plaintiff did not equal the expenditure incurred approximately by the sum of $12,500, that fact alone does not show that the plaintiff's default was deliberate and intentional. We agree with the learned counsel for the respondent that the advances, which under the contract the plaintiff was obliged to make, were not limited by the ordinary and customary advances made to parties who get out wood for the market, but only by the sum which the defendant actually and properly expended towards cutting and hauling the lumber. Nevertheless, the contract was one which would naturally breed dispute and difference of opinion, for no definite amount to be advanced was specified. Whether outlay made for the work of a permanent character, such as the construction of roads and the building of camps, the defendant was entitled to demand from the plaintiff, under the provisions of the contract, is not wholly free from doubt. While the fact that the amounts called for by the defendant largely exceeded the usual advances in the business did not justify the plaintiff in refusing to accede to the defendant's demands, still it tended to excuse plaintiff's hesitation in complying. The contract contained a provision that all matters of difference that might arise between the parties respecting the contract or the fulfillment thereof should be determined by arbitration. We concede that this provision was too broad to be enforced by the courts. Nevertheless, granting its invalidity, the parties negotiated for an arbitration under it. These negotiations had not been terminated at the time of the defendant's rescission of the contract. There is nothing to show that the position of the plaintiff in this controversy was not taken by it in good faith. It was willing to help the defendant obtain money, for it expressly offered to discount the defendant's note for such

amount as it might need.   There is not a word from the plaintiff to be found in the correspondence tending to show an abandonment of the contract.   On the contrary, it was constantly insisting on its performance.   It is true that the plaintiff erred in its construction of the contract and as to its liability to make advances thereunder, and, therefore, that it had not strictly performed the contract on its part.   But that did not necessarily debar it from relief.   Of such a situation this court said by Judge Danforth in *Day* v. *Hunt* (112 N. Y. 191) : " These objections cannot prevail.   On the contrary, the very fact that the plaintiff has not strictly performed his part, and so is without remedy at law, is frequently a sufficient reason for the interposition of courts of equity, where relief is given, notwithstanding the lapse of time according to the actual merits of the case.   *   *   *   There is nothing to show that either party abandoned the contract or wished or intended to do so. They differed merely as to the form of the mortgage, and, so far as appears, that difference only prevented the completion of the sale.   Although wrong in his construction as to its proper force, the plaintiff cannot be said to be wholly without excuse."

There is this further and, to my mind, controlling factor in this case.   There had been at least a part performance by the plaintiff and a substantial part, and courts of equity regard with more favor actions to enforce specific performance where there has been performance in part than where nothing has been done by either party under the contract.   Thus Mr. Pomeroy writes (Eq. Jurisprudence, sec. 812) of the specific performance of contracts for the sale of land : " But in some cases time almost ceases to be material, as where the vendee has paid the purchase money, or is in possession of the land, it is then said that time does not run against him."   While the trial court has found that the defendant notified the plaintiff of its intention to rescind the contract, unless its requests were complied with, it must be borne in mind that this notice was of the most general character, that is to say, that if advances were not more promptly made the defendant would be unable to fulfill and would give up the contract.   Never-

7

theless, despite these notices, the defendant continued to take such moneys as the plaintiff advanced. Such receipt operated to abrogate any right to rescind that might then exist. The last payment so made by the plaintiff was the sum of $5,000 on March 12th. The rule seems to be well settled that though a party to a contract is in default, if the other party continues to negotiate with him after such default the contract cannot be rescinded without reasonable notice to the party in default to comply with the contract within a specified time. (Pomeroy's Eq. Jurisprudence, sec. 815.) In *Webb* v. *Hughes* (L. R. [10 Eq.] 281) a contract for the sale of land was to be closed on February 26th. Negotiations were continued after the date set for closing, and on April 7th the purchaser gave notice of immediate abandonment. Specific performance was decreed, the vice chancellor saying : " But, having once gone on negotiating, beyond the time fixed, he is bound not to give immediate notice of abandonment, but must give a reasonable notice of his intention to give up his contract if a title is not shown." In *Parkin* v. *Thorold* (16 Beavan, 59) notice was given on October 21st that the contract must be performed on November 5th or otherwise would be abandoned. Specific performance was decreed, the length of notice being held insufficient. The defendant's letter of March 24th, already recited in full, gave the plaintiff no notice that a certain amount must be paid by a certain time, but merely expressed the feeling of the defendant that it was " disinclined to continue trying to fulfill the contract on their part, unless the advances can be more promptly made." This was wholly insufficient as a notice of the defendant's election to abandon the contract unless by a certain time the plaintiff made the necessary advances. The defendant could not under the circumstances rescind the contract without notice. We are of opinion, therefore, that the judgments below were erroneous.

It is unfortunate that the case should have been so long in litigation that during its pendency over half the first contract term has expired. However, in case the plaintiff succeeds on a new trial the court may mold its decree in such form as,

in view of the lapse of time and its effect on the interest of the parties, equity may require.

The judgment appealed from should be reversed and a new trial granted, costs to abide the final award of costs.

EDWARD T. BARTLETT, VANN, WERNER and WILLARD BARTLETT, JJ., concur; GRAY, J., dissents; CHASE, J., not sitting.

Judgment reversed, etc.