BERNHARDT LUMBER COMPANY, Plaintiff, *v.* EDWARD C.
METZLOFF, Defendant.

(Supreme Court, Erie Trial Term, November, 1920.)

Sales — right of seller to rescind contract — waiver of default in
payment of installments due — contracts — counterclaim —
damages.

The right of the seller to rescind a contract for the sale
of goods, for the failure of the buyer to pay an installment
of the purchase price when due, depends upon the nature of
the contract and the circumstances under which the failure
occurs.    (P. 292.)

Where a Virginia contract for the sale of goods recited that
it was to cover the requirements of two New York corpora-
tions, "estimated sixty to seventy cars uniform quantity of
cars each month," the action of the seller without protest in
treating the contract as in force and making a shipment there-
under, while the buyer was technically in default in the pay-
ment of installments due, is a waiver of such default.    (P. 294.)

Such a contract is governed by the rules of the common
law, and where in an action to recover a balance due on the
purchase price of goods actually shipped, it appears that
plaintiff did not insist upon prompt payment of installments
of the purchase price as a condition of its continuing to carry
out the contract, but based its refusal to proceed wholly and
solely on the lack of cars and labor troubles, and it further
appears that closely following defendant's default the plaintiff
by letter notified defendant that owing to existing conditions
it could not and would not perform on its part, the default of
the defendant to pay the installments due is no defense to
its counterclaim for damages for a breach of the contract on
plaintiff's part, as in the circumstances the defendant as a
protection against the possible consequences of resulting dam-
ages growing out of plaintiff's default was justified in with-
holding payments due; at least, the failure to make them cannot
be taken advantage of by plaintiff to justify, its conduct.
(P. 295.)

The printed words at the top of the order for the goods
"all agreements contingent upon causes beyond our control"

were but a reservation in favor of defendant and not one for the benefit of plaintiff, and in the absence of legal evidence that deliveries were in fact made impossible for reasons beyond plaintiff's control, a defense to the counterclaim that plaintiff's failure to make delivery was due to causes beyond its control, must fail.  (P. 296.)

Where it appears that up to the time of the trial defendant has suffered no actual loss by reason of any default on plaintiff's part, unless it be loss of profits which he otherwise would have made, the evidence as to which gives the court no data on which any finding can be made, and the evidence of the quantity required or ordered by the New York corporations is so vague and uncertain as to render it impossible to ascertain amounts within the rule laid down by controlling judicial decisions, the defendant is only entitled to nominal damages and the plaintiff is entitled to judgment for the amount demanded in its complaint.  (Pp. 299–301.)

Where the refusal of a party to fulfill its contract is based upon particular objections formally and deliberately stated, all other objections are deemed to have been waived.  (P. 295.)

ACTION on contract.

Edward L. Jung, for plaintiff.

Norman D. Fish and Dow Vroman, for defendant.

WHEELER, J.  This action is brought by the plaintiff to recover a balance due for certain box shooks sold and delivered by the plaintiff under contracts between them, one of which contracts bears the date December 8, 1916.  This contract although dated December 8, 1916, was without doubt signed and executed early in the year 1917, and dated back so as to embody, with some modifications, an earlier oral agreement made about December 8, 1916.  The contract took the form of a written order by the defendant to the plaintiff, which was formally accepted by the plaintiff.  By its provisions the plaintiff, which operated a mill at Boydton, Va., agreed to sell and deliver to the defend-

ant box shooks of certain sizes and dimensions at a base price of twenty-two dollars per 1,000 feet. The agreement was to extend from January 1, 1917, to January 1, 1918. The written order recited: *" This contract to cover the requirements of O. B. Co. Inc. and N. Y. Mills Corp., estimated sixty to seventy cars uniform quantity of cars each month."*

The companies referred to were the Oneida Bleachery Company and the New York Mills Company of New York Mills, N. Y.

The evidence shows that there were certain delays by the plaintiff in making deliveries during the winter months of 1917; but notwithstanding in April of that year it had shipped cars of shooks so that substantially at that time it had sent forward cars which would average about five per month. Then came delays in making shipments. The voluminous correspondence between the parties shows that owing to the declaration of war with Germany, made about that time, the plaintiff claimed it was unable to procure cars in which to ship the shooks by reason of an alleged embargo on freight cars by the railroads. Anyway shipments were not made, and the plaintiff shortly after declared in its letters to defendant its inability to carry out its contract, and gave notice, in substance, that it had shut down the box department of its mill until conditions should so change that it could operate its mill. The defendant did not accede to this and in numerous letters written about this time urged the plaintiff to make shipments to the concerns named. This however was not done. The plaintiff brings this action to recover a balance due on the purchase price of shooks actually shipped.

The defendant by way of counterclaim sets up a claim for damages for a breach of contract on the part of the plaintiff to deliver box shooks as agreed.

The evidence shows that owing to the war the market price of lumber used in the manufacture of shooks rapidly advanced. The price in the market advanced on an average of two dollars per 1,000 each and every month, until in December, 1917, lumber had reached the price of forty-eight dollars per 1,000. The defendant seeks to recover as damages the difference between the contract price of twenty-two dollars per 1,000 feet and the advanced price. As against this counterclaim the plaintiff contends, among other things, that the counterclaim cannot be maintained because at the time of the alleged breach on the part of the plaintiff, the defendant himself was in default by reason of his failure to make payments for box shooks previously delivered according to the terms of the agreement, and that this failure on his part justified the plaintiff in cancelling the contract on its part. That the defendant did fail to make the payments within the agreed time is not in dispute; but the letters passing back and forth between the parties written about this time show that the plaintiff did not then base its refusal to make further deliveries on the ground, or for the reason, that timely payments had not been made, but upon the grounds already stated of its inability to make shipments owing to the inability to procure cars for that purpose.

The question of law is, therefore, presented whether the failure of the defendant to make payments within the agreed time justified the plaintiff, under the circumstances, in repudiating the obligations of the contract on its part, and constitutes a defense to the counterclaim asserted.

The six unpaid installments fell due April 18, 20, 20, 26, 28 and June 11, 1917, and notwithstanding the failure to pay the April installments when due, the plaintiff continued to deal with the contract as though in

force, and on May twelfth made delivery of another car, which was the last sent forward. The payment for this car fell due on June eleventh, but before that date the plaintiff threw up its contract and notified the defendant it could not perform.

We think the defendant's defaults in making payments of the installments did not, under the circumstances, justify a rescission by the plaintiff. We do not mean to say that the plaintiff could not have insisted on the prompt payments of such installments as a condition of its continuing to carry out the contract on its part. It however did not do so, but based its failure to proceed wholly and solely on lack of cars and labor troubles.

In contracts of this character the failure to pay an installment when due does not necessarily entitle the seller to rescind a contract, but depends upon the nature of the contract and the circumstances under which the failure occurs. *St. Regis Paper Co.* v. *Santa Clara L. Co.,* 186 N. Y. 89; *Wharton* v. *Winch,* 140 id. 287; *Helgar Corp.* v. *Warner's Features,* 222 id. 449; *Graves* v. *White,* 87 id. 463–466; *Taylor* v. *Goelet,* 208 id. 253; *Alden Coal Mining Co.* v. *Amos Coal Co.,* 192 App. Div. 371; *Pipe & Cont. S. Co.* v. *Mason & Hanger Co.,* 181 id. 317; *Monroe* v. *Reynolds,* 47 Barb. 574; *Quarton* v. *Amer. Law Book Co.,* 143 Iowa, 517; 32 L. R. A. (N. S.) 1, note; *Mersey Co.* v. *Naylor,* 9 App. Cas. 434; *Blackburn* v. *Reilly,* 47 N. J. L. 290; *Monarch Cycle Mfg. Co.* v. *Royer Wheel Co.,* 105 Fed. Repr. 324; *Otis* v. *Adams,* 56 N. J. L. 38; *Tucker* v. *Billing,* 3 Utah, 82; *West* v. *Bechtel,* 125 Mich. 144; 51 L. R. A. 791; *Norrington* v. *Wright,* 115 U. S. 188; *Beatty* v. *Howe Lumber Co.,* 77 Minn. 272.

The Personal Property Law of this state, section 126, subdivision 2, governing the sales of goods, contains a provision relating to sales of this character.

It reads: "Where there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more installments, or the buyer neglects or refuses to take delivery of or pay for one or more installments, it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

The contract now under consideration however is doubtless not to be governed by the New York statute, for the reason it must be deemed a Virginia and not a New York contract. It took the form of a letter from the defendant to the plaintiff confirming "day letter" (*i. e.,* telegram), and then proceeds to say: "The following agreement has been entered into between the Bernhardt Lumber Co., Boydton, Va., and the Reliable Box & Lumber Co. of N. Tonawanda, N. Y.," etc. This letter was mailed to plaintiff at Boydton, and formally accepted by that company at that place. The agreement was to be carried out in Virginia by the shipment of shooks ordered at Boydton. Consequently we must treat the contract as a Virginia one, and governed by the rules of the common law.

While there is some conflict in the decisions of various states and countries, nevertheless we think that on the whole the rule laid down by the best considered decisions does not materially differ from the rule laid down in the New York statute.

The recent case of *Helgar Corporation* v. *Warner's Features,* 222 N. Y. 449, discusses the questions presented here under the provisions of the New York stat-

ute, but we think the learned opinion of Judge Cardozo in that case clearly indicates that under the common law the failure of the defendant to pay the installments due in April did not justify the plaintiff in rescinding the entire contract. At the very time these installment fell due the plaintiff was behind in the shipments ordered, and was excusing as best it could its failure to ship. These excuses of failure to ship were not based on any failure of the defendant to pay the installments due. No complaint was made by it of the failure to make prompt payment. There was no demand for such payment, and no statement of an intention to cancel on that account. On the other hand there was a shipment of at least one car in May by the plaintiff showing an election at that time to treat the contract as in full force and effect. The defendant at that time did not refuse to pay. I do not think it can be said the default on his part was " so substantial and important as in truth and fairness to defeat the essential purpose of the parties," which ought to be the rule to govern cases of this kind and which is the rule sought to be embodied in the Personal Property Law of the state.

In any event the plaintiff while the defendant was in technical default in the payment of installments due, without protest, treated the contract as in force, and made a shipment thereunder. Such action on its part may be regarded as a waiver of such default. At least if the plaintiff intended to avail itself of such technical default it should have acted upon it, and not continued to deal with the defendant as though the contract was in full force and effect.

*Taylor* v. *Goelet,* 208 N. Y. 253. In that case the court said: " Where an executory contract fixes the time within which it is to be performed and performance within that time is waived by the parties to the

agreement, neither party can thereafter rescind the contract on account of such delay without notice to the other requiring performance within a reasonable time, to be specified in the notice, or the contract will be abrogated.  *  *  *  The basis of the rule requiring notice of intention to rescind is to be found in the reluctance of the courts to enforce penalties and forfeitures in matter of contract.''

Following very closely on the defendant's default in paying the April installments came the action of the plaintiff declaring its inability to fulfill. These letters while not in terms rescinding the contract, nevertheless notified the defendant that owing to existing conditions it could not and would not perform on its part.

Under such circumstances the defendant was justified we think in withholding the payment of installments due as a protection to himself against the possible consequences of resulting damages growing out of the plaintiff's default. At least the failure to make payment after the plaintiff had defaulted ought not to be taken advantage of by the plaintiff to justify its conduct.

We therefore reach the conclusion that default of the defendant to pay the installments due constitutes no defense as against the assertion of the defendant's counterclaim for a breach of contract on the plaintiff's part. We might further add as pertinent to the case under consideration, that when a party to a contract refuses to fulfill, based upon particular objections formally and deliberately stated, all other objections are deemed waived. *Littlejohn* v. *Shaw*, 159 N. Y. 188. This rule would seem to apply to the case in hand.

Another defense to the defendant's counterclaim is that the failure on the part of the plaintiff to make deliveries of box shooks was due entirely to causes

beyond the plaintiff's control. At the top of the letter-head of the defendant on which was written the order for the box shooks in question, which order was accepted by the plaintiff, were printed the following words, *" all agreements contingent upon cases beyond our control."* This at most is but a reservation in favor of the defendant placing the order, and not one for the benefit of the plaintiff. No such reservation was made by the plaintiff when it accepted the order.

There is however no legal evidence in this case that deliveries were in fact made impossible by reasons beyond the plaintiff's control. It is true that in letters written by plaintiff to the defendant the plaintiff asserts over and over again that owing to a railroad embargo on cars, and labor troubles, it was unable to make shipments of box shooks covered by the contract between them. These letters however do not establish the fact. The statements made in the letters are nothing more or less than self-serving declarations in their own behalf. The letters may define the plaintiff's position and claim, but do not establish the fact. If the plaintiff desired to rely on the defense in question, it should have called witnesses to establish the fact, and then the defendant would have had an opportunity to cross-examine them as to any statement made. But even if the statements made in the letters referred to could be deemed as making out a *prima facie* case as to the truth of the facts alleged, we are nevertheless of the opinion such facts made out no defense for a nonfulfillment of the contract between the parties. The rule is that when a " party by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding accident or delay by inevitable necessity, because he might have provided against it by contract." *Harmony* v. *Bingham,* 12 N. Y. 99; *Cameron-Hawn Realty*

*Co.* v. *City of Albany,* 207 id. 377; *Larabee Co.* v. *Cross-man,* 100 App. Div. 499; *Whitehouse* v. *Staten Island Water Co.,* 101 id. 112; *Cottrell* v. *Smokeless Fuel Co.,* 148 Fed. Repr. 594.

We think we need not pursue the question further. We hold the defense raised by the plaintiff to the defendant's counterclaim must fail.

This brings the court to the consideration of the question of damages recoverable by reason of the counterclaim. This we deem the most important and serious question in the case, and to our mind the defendant has established only the right to recover nominal damages. Certain considerations force us to this conclusion.

The contract between the plaintiff and the defendant was made for a specific purpose, and by its very language provides it was intended " *to cover the require-ments of O. B. Co. Inc. and N. Y. Mills Corp., esti-mated sixty to seventy cars uniform quantity of cars each month.*"

As matter of fact the defendant had no contract himself with the Oneida Bleachery, Inc., or with the New York Mills Corporations, but his brother did have contracts with those concerns. The brother's contract with the bleachery company called for the delivery of from thirty-six to forty cars to cover requirements during the year 1917 at the base price of twenty-nine dollars and fifty cents per 1,000 feet allowing freight to New York Mills. The contract with the New York Mills was for the same price the same period to cover requirements twenty-four to thirty cars.

The defendant testified that he in turn had a con-tract with his brother to carry out his brother's con-tracts with these New York Mills concerns, but this latter contract was not produced, the defendant testi-

fying he was unable to find it. He did not testify what price he was to receive from his brother for the shooks so to be furnished to carry out his brother's agreements with the New York Mills companies, and so far as the court is able to discover, there is no evidence upon which the court can compute the profit the defendant would have realized had the plaintiff delivered the full quantity of shooks called for in the contract between the plaintiff and defendant. If the court were justified in assuming that the defendant was to receive for the shooks delivered the price of twenty-nine dollars and fifty cents per 1,000, nevertheless the court still would be unable to compute the profits that would be realized, for the reason that by virtue of the contracts between the New York Mills companies and defendant's brother, the freight charges on shipments were to be deducted from the twenty-nine dollars and fifty cents per 1,000, whereas the price to be paid plaintiff was twenty-two dollars per 1,000 delivered on the cars at Boydton, and there is no evidence what the freight rates between Boydton and New York Mills were or would have been.

It does not follow, however, that because the defendant testified his agreement was to carry out his brother's contract that the price he was to receive was to be the same his brother was to get.

The defendant contends, however, that his measure of damages for a failure by plaintiff to deliver as per contract is the difference between the contract and the market price of the lumber to be furnished. If the shooks in question were contracted for, for general merchandise purposes, the measure of damage would beyond question be the difference between the contract and market price, for the buyer in such a case could sell the stock purchased at the advanced market price to whomever he chose. In this case,

however, no such right existed. The contract between the parties was expressly to meet the requirements of the Oneida Bleachery, and of the New York Mills Corporation. The defendant could demand no more of the plaintiff. He could not divert the stock obtained under his contract to any other purpose than the requirements of the companies named. 35 Cyc. 207.

Consequently the only profits the defendant could possibly realize would be the difference between the price paid by him and the price received from the companies named. Consequently the damages recoverable necessarily would and should be measured by the profits, if any, lost, or if the defendant was compelled to go into the open market and buy shooks to supply the demands of these concerns, then the difference between what the defendant was compelled to pay for such stock in the market, and what he was to pay for the same thing under contract with the plaintiff.

There is, however, no claim that the defendant or his brother went into the market and purchased shooks to supply what the plaintiff failed to deliver. The evidence, however, goes further and shows that the New York Mills concerns never made any demands on either the defendant or his brother for damages growing out of the failure of the plaintiff to make deliveries.

The defendant, therefore, up to the present time, at least has suffered no actual loss by reason of any default on the plaintiff's part unless it be the loss of profits which he otherwise would have made. As to those profits, if any, we have already seen the evidence gives the court no data on which any finding can be made. There are other considerations growing out of the nature of the contract which render the ascertainment of damages difficult, if not impos-

sible as the case now stands. The contract was made " *to cover the requirements of O. B. Co., Inc., and N. Y. Mills Corp. estimated sixty to seventy cars uniform quantity of cars each month.*"

The quantity is indefinite. It is only such as the New York Mills concerns may require. The rule governing such agreements is stated in the Cyclopedia of Law and Procedure (vol. 35, p. 207), as follows: " Under a contract to sell all the goods of a certain kind the buyer may order or require, the seller is bound absolutely to deliver such quantity of the specified goods as may be called for by the purchaser, and the purchaser is bound to accept all deliveries tendered within the limits of his requirements. Generally the obligation in either case is not affected by any mere estimate of the quantity that will be needed.  *  *  * The seller is relieved from making delivery and the buyer from accepting if the latter discontinues the use of goods or goes out of business as an individual, and enters into a partnership." See also cases cited in support of the propositions stated. *New York Central Iron Works Co.* v. *United States Radiator Co.,* 174 N. Y. 331; *Brawley* v. *United States,* 96 U. S. 168–171; *Wolf* v. *Wells Fargo Co.,* 115 Fed. Repr. 32.

The correspondence between the parties shows that orders for shipments to the New York Mills companies were placed with the plaintiff and never filled, and after a time when shipments were urged and the plaintiff endeavored to excuse its failure to ship, the correspondence stopped.

There is no evidence whatever of the exact quantity required by those companies, or the exact quantity ordered beyond the very general statement of the defendant on the witness stand that the requirements of the New York Mills companies was seventy cars. I infer that was the witnesses' conclusion, without

specific orders having been placed with the plaintiff after the middle of the year. The court need only say that in any event the evidence of requirements is so vague and uncertain that it would be quite impossible to ascertain amounts within the rule laid down by the authorities cited.

The court, therefore, concludes the defendant is only entitled to recover nominal damages under his counterclaim, and the plaintiff is entitled to judgment for the amount demanded in its complaint.

Let findings be prepared in accordance with these views.

Judgment for plaintiff.