A contract of employment containing restrictive provisions as to the right of the employee to work for a competitor of the employer in the territory within one year after termination of the employment, and requiring one week's notice before the employment can be terminated, is an entire contract and the whole contract must stand or fall together. If the employer discharges the employee in violation of the provision requiring one week's notice, he is not entitled, in equity, to enjoin the employee from working for a competitor.
 No. 14951. SEPTEMBER 8, 1944. REHEARING DENIED OCTOBER 7, 1944.
Felton Beauty Supply Company Inc. filed in Floyd superior court an equitable petition against Jack Levy in which it alleged that a purported contract was signed by the plaintiff and the defendant on April 24, 1939. This contract, omitting the formal parts, is as follows: "Whereas, the company is engaged in the beauty-supply business, selling beauty supplies in the States of *Page 384 
Georgia, Alabama, and Tennessee; and whereas, the State of Georgia, Alabama, and Tennessee [have] been traveled over by the representatives of the company, and the beauty shops in said States have been solicited by said company through its sales representatives, and through advertising mediums, and a large, valuable, and extensive trade has been established and maintained at a great expense to said company; and whereas, the said Jack Levy desires to enter the employ of the said company; and whereas, a great loss and damage will be suffered and sustained by the said company, if, during the term of this contract, or for one (1) year immediately following the termination of this contract, the said salesman should for himself, or in behalf of, or in conjunction with any other person, persons, firm, company, partnership, or corporation, call upon, solicit, sell, or endeavor to sell beauty supplies, beauty-shop equipment, beauty-shop furniture, permanent-wave machines, hair dryers, permanent-wave supplies, or all other things and products incidental to the beauty-supply business, to beauty shops and the customers of the company, within the States of Georgia, Alabama, and Tennessee, and especially the counties of the States of Georgia, Alabama, and Tennessee, hereinafter enumerated in paragraph No. 8, for which damage and loss by reason of his financial conditions and circumstance the said salesman could not be compelled by law to respond in damages in any action at law; now, therefore, the said parties hereto, for and in the consideration of the premises and mutual promises and covenants therein contained and by them respectively to be kept and performed, covenant and agree [as] follows: 1. The Felton Beauty Supply Company Inc. agrees to employ Jack Levy as a salesman and sales representative, and hereby agrees to pay the said Jack Levy the sum of sixty-five dollars per week as a drawing acct. against 15% (fifteen per cent) commission on all net sales made by the salesman or net sales going into the salesman's territory, which territory will be hereinafter more fully set forth, or at such wages, salary or commission as may be hereafter or from time to time agreed upon. 2. All sales made by the salesman or going into his territory shall be subject to the acceptance, rejection, or approval of the president of the company at the principal office of the company at 207 Spring Street, N.W., Atlanta, Georgia. 3. The salesman shall not be entitled to any commission on sales *Page 385 
made by him, or going into his territory, until and unless the customer or customers to whom such sales were made to, has paid for in full to the company the amount of such sale or sales. All sales shall be subject to the rules and regulations of the company now in force, or those rules that may from time to time be in force. 4. In the event that the company pays to the salesman money for commissions against orders taken and sales made where the sale has not been fully paid for by the customer or customers from whom such sale or sales have been made, such sums of money so paid over to the salesman are to be deemed a cash personal loan by the company to the salesman, and in the event, at time of settlement, the salesman does not have sufficient amount of paid sales accrued, to entitle him to commission to offset the amount of money loaned to him by the company as aforesaid, then and in that event the salesman agrees to repay to the company the amount of money due the company for said loans made as stated herein. The company shall have the right and authority to withhold any sums of money due said salesman and apply same to any indebtedness of said salesman to the company. The rights of the company shall be cumulative and alternative and a waiver, or indulgence on the part of the company, shall not act as a waiver of any subsequent default. 5. It is agreed that said salesman shall work in the States of Georgia, Alabama, and Tennessee, and the following counties in the States of Georgia, Alabama, and Tennessee, to wit: Georgia: Walker, Chattooga, Floyd, Polk, Haralson, Carroll, Heard, Troup, Harris, Chattahoochee, Stewart, Quitman, Randolph, Terrell, Marion, Catoosa, Whitfield, Gordon, Bartow, Paulding, Douglas, Coweta, Meriwether, Pike, Murray (west), Upson, Lamar, Taylor, Schley, Sumter, Webster, Spalding, Fayette, Fulton, Clayton, Cobb (west), Crawford, Dade, Muscogee, Talbot. Alabama: DeKalb, Cherokee, Etowah, Calhoun, Cleburne, Clay, Randolph, Talladega, Coosa, Tallapoosa, Chambers, Lee, Russell, Barbour, Bullock, Macon. Tennessee: Hamilton, Ta., which counties shall be known as the `salesman's territory.' It is agreed that said territory may be changed from time to time, when and as same is mutually agreed upon, and when and as said change is made, said territory shall be attached hereto, made a part of this contract, and said salesman and said company shall be fully bound under the terms of this contract. It being agreed that the terms *Page 386 
and conditions of this contract shall apply to all territory worked by this salesman. 6. It is agreed, that said salesman shall work in the territory known as the `salesman's territory' as set out in paragraph No. 8 of this contract, working in the capacity of a salesman, sales solicitor, and sales representative of the company, diligently, efficiently, and to the best of his ability; and said salesman hereby agrees that he will not, during the term of this contract, nor for one (1) year immediately following the termination of this contract, work in the States of Georgia, Alabama, and Tennessee, for himself, or for any other person, persons, firm, company, partnership, or corporation, directly or indirectly, or in conjunction with any other person, persons, firm, company, partnership, or corporation, selling beauty supplies, beauty-shop equipment, beauty-shop furniture, beauty-shop fixtures, permanent hairwaving machines, permanent hair-waving supplies, hair dryers, and/or any other things or products incidental to the beauty-supply business now handled by, or from time to time handled by the company, during the term of this contract. 7. The said salesman further covenants and agrees that he will not, during the term of this contract, nor for one (1) year immediately following the termination of this contract, work in the counties of the States of Georgia, Alabama, and Tennessee, listed as the `salesman's territory' as set forth in paragraph No. 8 of this contract, for himself, or for any other persons, firm, company, partnership, or corporation, directly or indirectly, or, with or in conjunction with any person, persons, firm, company, partnership, or corporation selling beauty supplies, beauty-shop equipment, beauty-shop furniture, beauty-shop fixtures, permanent hair-waving machines, permanent hair-waving supplies, hair dryers, and/or any other things or products incidental to the beauty-supply business now handled by, or from time to time handled by the company, during the term of this contract. 8. The said salesman hereby covenants and agrees, which covenant and agreement is of the essence of this contract, that at no time during the term of this contract, nor for one (1) year immediately following the termination of this contract, will he, for himself, or in behalf of any other person, persons, firm, company, partnership, or corporation, call upon to sell, or endeavor to sell to any of the customers of the Felton Beauty Supply Company Inc., beauty-shop equipment, beauty supplies, beauty-shop *Page 387 
furniture, beauty-shop fixtures, permanent hair-waving machines, permanent hair-waving supplies, hair dryers, or any things or products now handled by, or those that might be handled by the company during the term of this contract. 9. The said salesman hereby covenants and agrees that at no time during the term of this contract, nor for one (1) year immediately following the termination of this contract, will he, directly or indirectly, for himself, or in conjunction with any other person, persons, firm, company, partnership, or corporation, solicit, divert, or take away, any of the customers or patronage of the Felton Beauty Supply Company Inc. 10. It is mutually agreed that the employment set forth in this contract may be terminated by either party, upon the giving of one week's notice to the other. 11. The provisions of this contract shall extend to the successors and assigns of the Felton Beauty Supply Company Inc."
It was alleged that the defendant worked for the plaintiff until on or about May 20, 1944, when he terminated the employment; that he was then employed by and is now working for Savannah Barber Beauty Supply Company in the capacity of soliciting purchases of beauty supplies of various categories and character for said company throughout the State of Georgia and other States; that the plaintiff had long been engaged in the beauty-supply business in the States of Georgia, Alabama, and Tennessee, and had built up an extensive business; that the defendant as an employee of a competitor of petitioner is soliciting, not only the general trade, but also the customers of the plaintiff; that the plaintiff is suffering and will suffer irreparable damages; that the defendant is financially unable to respond in damages. There was a prayer for an injunction and damages.
The defendant answered, admitting the execution of the contract, the termination of the employment thereunder, and his employment by a competitor; but he contended that his employment was terminated by the plaintiff without cause, and without giving to him the one week's notice provided in the contract. He further alleged that the purported contract was void, as being contrary to public policy, as an unlawful restraint of trade; void for uncertainty; void for want of consideration; and as lacking mutuality of consideration.
On the interlocutory hearing, the only conflict in the evidence *Page 388 
was upon the questions, whether the plaintiff or the defendant terminated the employment, and whether the one week's notice provided by the alleged contract was given. The evidence on these questions is not set forth because both the plaintiff in error and the defendant in error concede in their briefs that the evidence as to these matters was in sharp conflict.
The trial judge refused to enjoin the defendant, and the exception is to this judgment.
The first question which we are called upon to decide in this case is whether or not the failure of the employer to give to the employee the one week's notice, provided for in the contract of employment, before terminating the contract, was such a breach of its terms as would preclude the employer from a right to enjoin the defendant's violation of the restrictive clauses in the contract. The evidence being in conflict on this question, the trial judge, under his discretion, was authorized to find that the employer terminated the contract without giving the one week's notice. The plaintiff in error contends in its brief: "The right of plaintiff to an injunction does not depend upon whether plaintiff or defendant terminated the employment, or upon whether, if the plaintiff terminated it, the defendant was given one week's notice of the termination." The Code, § 20-109, is as follows: "A contract may be absolute or conditional. In the former, every covenant is independent, and the breach of one does not relieve the obligation of another. In the latter, the covenants are dependent the one upon the other, and the breach of one is a release of the binding force of all dependent covenants. The classification of every contract must depend upon a rational interpretation of the intention of the parties." Section 20-112 reads as follows: "A contract may be either entire or severable. In the former, the whole contract stands or falls together. In the latter, the failure of a distinct part does not void the remainder. The character of the contract in such case is determined by the intention of the parties." Those sections are cited as authority for this position. We think that a mere reading of the contract in the instant case is sufficient to show that it was one contract and entire. *Page 389 
The restrictive clauses are certainly dependent upon the provision as to employment, and one cannot exist without the other. Therefore the contract is entire and the whole contract must stand or fall together.
It is further contended that the provision requiring one week's notice, on account of the short length of time involved, is not vital or important, and that its violation should not prevent the employer, by injunction, from enforcing the restrictive clauses of the contract. A sufficient answer to this position is that the employer, under the terms of the contract, could at the end of one day's work give to the employee the week's notice, and thereby terminate the employment in eight days from its beginning. Therefore by the terms of their agreement, the parties made one week and one day the period of time in which the contract could be terminated. The period of one week thus becomes relatively an important and vital period of time. The employer cannot in this manner make the one-week period vital as to himself and unimportant as to the employee.
We do not find any decisions of this court in which this identical question has been decided. We do find an English case, General Bill Posting Company Ltd. and Atkinson, respondent, reported in 1 British Ruling Cases, p. 497, decided in 1909, in which this language is used: "Employers agreed with their manager that he should hold office subject to termination at twelve months' notice by either party and with a restriction on his right to trade after its termination. The employers having wrongfully dismissed him without notice: Held, that he was entitled to treat the dismissal as a repudiation of the contract and to sue for damages for breach of contract, and was no longer bound by the restrictions on trade." It is true that the notice required in that case was twelve months and the notice required in the instant case is one week. This, however, in view of what has been said, would make no difference.
We hold the contract in the instant case to be entire, and the clause requiring one week's notice of intention to terminate the contract to be a vital clause of the contract, a breach of which on the part of the employer would relieve the defendant from the provisions of the restrictive clauses in the contract.
In passing upon the question now before the court, it becomes unnecessary to decide, under the above rulings, whether or not the *Page 390 
contract is subject to the other criticisms insisted upon. There was no error in refusing to enjoin the defendant.
Judgment affirmed. All the Justices concur.