J. H. GOLDBERG CO., INC., Formerly JAROB FURNITURE CORPORATION, Respondent, v MALVIN S. STERN, Appellant.

Fourth Department, July 12, 1976

*Martin, Dutcher, Mousaw, Vigdor & Reeves (Robert J. Pearl* and *James S. Grossman* of counsel), for appellant.

*Nixon, Hargrave, Devans & Doyle (David Lascell* and *Michael Lindburg* of counsel), for respondent.

DILLON, J. Embarking upon a new business venture, plaintiff J. H. Goldberg Co., Inc. (Goldberg) undertook the ownership and operation of a furniture and appliance store in the City of Rochester, Monroe County, New York. On May 15, 1973 Goldberg entered into an employment contract with defendant Malvin S. Stern (Stern) under which Stern was employed as president and general manager for a two-year period at an annual salary of $50,000. Stern had substantial experience in the field of retail furniture and appliance sales in Miami, Florida, but his only prior business activity in Monroe County was in radio and television repair. It is undisputed, however, that Stern's prior experience motivated Goldberg to engage his services under the employment contract.

Paragraph 10 of that contract constituted a restrictive covenant not to compete, in the following language:

"Employee further agrees that during the period of this agreement and for a period of one year after the termination thereof for any reason or for such period as Employee is receiving payments from the Company in the form of compensation or otherwise, whichever is longer, he will not, directly or indirectly, engage in the retail sale of furniture and/or appliances within the County of Monroe, State of New York, either for his own benefit or for the benefit of any other person, firm or corporation whatsoever other than the Company."

Stern commenced employment pursuant to the contract and promptly hired as an employee Mrs. Maria Garcia, who had worked with Stern in a retail furniture and appliance business in Miami and who was expert in the Spanish language. Approximately 10% of Goldberg's business was among Spanish-speaking people. Though the term of the agreement was two years, Goldberg continued to employ Stern until August 25, 1975, at which time Stern's employment was discontinued because of dissatisfaction with the sales record of the business.

On November 5, 1975 Stern became the manager of Reliable Furniture Company, Inc. (Reliable) of which his wife was the record owner and which also is located in the City of Rochester. There is no doubt that Stern actively participated in the negotiations for the purchase of Reliable. He hired Mrs. Garcia in the new business enterprise and shortly thereafter he caused a letter of solicitation, over Mrs. Garcia's name, to be broadly distributed among Spanish-speaking people in Monroe County.

On November 19, 1975 Goldberg procured a temporary restraining order at Special Term enjoining Stern: (1) from competing with plaintiff in violation of the agreement of May 15, 1973 and (2) from owning, operating or participating in any way in the management of Reliable. At trial there was testimony from a private investigator that during a continuous daily surveillance from November 28, 1975 to December 18, 1975, he observed Stern entering Reliable's premises on five different occasions and remaining there for periods ranging from eight minutes to 35 minutes.

The trial court found that the restrictive covenant was enforceable; that Stern violated its terms in becoming associated with Reliable; and that Stern additionally violated the

temporary restraining order. The court adjudged that Stern be enjoined through December 17, 1976 from directly or indirectly engaging in the retail sale of furniture and/or appliances within Monroe County. It is from that judgment that Stern appeals.

While the restrictive covenant is subject to interpretation as to time *(infra)*, it is first necessary to determine its general enforceability on the facts before us. That Stern undeniably violated the terms of the covenant in participating in the management of Reliable does not resolve the issue. Public policy demands that a man be afforded the opportunity to earn a livelihood. Any sanction eroding that opportunity is subject to the overriding limitation of reasonableness *(Purchasing Assoc. v Weitz,* 13 NY2d 267, 272). If that test is met and the employee's services are found to be "'special, unique or extraordinary'", the covenant may be enforced by injunctive relief *(Purchasing Assoc. v Weitz, supra,* p 272).

The multiple factors to be addressed in resolving the test of reasonableness were articulated by then Presiding Justice GOLDMAN, writing for a unanimous court in *Service Systems Corp. v Harris* (41 AD2d 20, 23). In affirming Special Term's issuance of a temporary injunction restraining a former management executive from competing in the business of providing building maintenance services, Justice GOLDMAN wrote:

"Basic to the consideration of the problem are five factors: (1) the restriction must be necessary for the employer's protection; (2) the time must be reasonable; (3) the geographical area must be reasonable; (4) the burden of the employee must not be unreasonable; and (5) the general public must not be harmed (Richards, Drafting and Enforcing Restrictive Covenants Not to Compete, 55 Marquette L. Rev. 241; Restatement, Contracts, § 516, subd. [f]). The facts of each case control as to whether a restrictive covenant is reasonable *(Karpinski v. Ingrasci,* 28 N Y 2d 45, 49; *Clark Paper & Mfg. Co. v. Stenacher,* 236 N.Y. 312, 321)."

Upon consideration of those factors applied to the record here, the issue of the enforceability of the restrictive covenant must be resolved in favor of Goldberg.

The restriction is necessary for Goldberg's protection. Stern was given exposure to the furniture and appliance business in the Rochester area only through the employment contract with Goldberg. He hired employees, including Mrs. Garcia, and was relied upon exclusively by Goldberg's owners to

establish the business operation, deal with suppliers and develop customer relationships. All of this was done at substantial expense to Goldberg, which now seeks to protect itself against Stern's effort to take advantage of that background and information by engaging in the same kind of business in close proximity to the Goldberg store.

Admittedly, Goldberg's owners were fledgling entrants into this highly competitive business and they relied heavily upon what they believed was Stern's expertise. It is argued that Goldberg, having removed Stern from his position on the basis of declining sales and lack of success in the management of the business, should not now be heard to complain of Stern's competitive efforts. Such an argument is not persuasive. Indeed, it can be urged with some logic that the financial condition of Goldberg's business is further evidence of the need for restraint upon Stern, particularly in light of the latter's aggressive efforts to solicit business among Spanish-speaking people through Mrs. Garcia.

The restrictions as to time and geographical area are reasonable, as is the burden upon Stern under the covenant. He is restrained only from engaging in the retail furniture and appliance business in Monroe County for one year. He is left to pursue his livelihood in any other community, including areas only a few miles from the City of Rochester. After the expiration of one year he may even resume his business in that city. Furthermore, Stern's maximum income in the same kind of business in Florida had been $20,000 per year. His employment by Goldberg for more than two years at an annual salary of $50,000 surely will relieve substantially any adverse impact the covenant might impose. Nor can it persuasively be argued that the public in Monroe County will be harmed if the covenant is enforced against Stern.

Stern was a unique and extraordinary employee. Goldberg reached out the length of the land to procure his services in a managerial and supervisory capacity. He was a management executive charged with the responsibility of developing and increasing business. The success or failure of his employer's venture was totally dependent upon Stern's discharge of his duties and obligations. He had access to all of the confidential information in Goldberg's business and he had the opportunity to develop close customer relationships. We have held that "[a]n employer has sufficient interest in retaining present customers to support an employee covenant where the em-

ployee's relationship with the customers is such that there is a substantial risk that the employee may be able to divert all or part of the business". *(Service Systems Corp. v Harris, supra,* pp 23-24.)

We turn now to the time limitation imposed under the covenant not to compete. The trial court erroneously found that the limitation extended for a period of one year after the discontinuance of Stern's salary on August 25, 1975. The court further extended the restriction for one year after December 18, 1975 upon its finding that Stern, by continuing to engage in the business of Reliable until that date, had violated the mandate of the temporary restraining order issued on November 19, 1975.

In order properly to interpret the intent of the parties with respect to the time limitation, we must look not only to the language of the restrictive covenant, but also to those other provisions of the agreement which give meaning and applicability to the covenant *(Paige v Faure,* 229 NY 114; *Fleischman v Furgueson,* 223 NY 235).

Except as specifically provided for in other clauses of the agreement, paragraph 2 establishes the term of the agreement as two years. Earlier termination may result from any one of several events, as follows: a violation of the agreement by Stern; failure of attainment of $150,000 minimum company net income in any fiscal year; death, illness or incapacity of Stern; or termination of Stern's employment by Goldberg without cause, in which event Goldberg was mandated to continue to pay Stern the balance of his salary in substantially equal monthly installments for the remainder of the original two-year term of the agreement.

It is clear that the covenant was applicable for one year after termination of the agreement, regardless of when termination took place, unless it occurred without cause during the first year of the agreement and Goldberg was required to pay Stern's salary for the balance of the term. In that event Stern would have been free to compete with Goldberg when the original term ended. Furthermore, the covenant's applicability could extend indefinitely through the period of Stern's continued employment if his services were perpetuated after the expiration of the original term as provided for in paragraph 18 of the agreement.

Thus, if we were to interpret the covenant as restricting Stern from engaging in the retail furniture business for a

period of one year after the termination of payments, as was done by the trial court, the phrase "whichever is longer" in the covenant would be meaningless. The period of one year after the termination of the agreement could never exceed the period of one year after the cessation of payments by Goldberg to Stern. It is a cardinal rule of construction that a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect *(Corhill Corp. v S. D. Plants, Inc.,* 9 NY2d 595, 599; *Muzak Corp. v Hotel Taft Corp.,* 1 NY2d 42, 46).

Therefore, upon consideration of the other relevant provisions of the agreement and from the actual language of the covenant, we conclude on the facts before us that the parties intended that Stern should be prohibited from competing with Goldberg for one year after the termination of the agreement on May 15, 1975, which restriction is for a period longer than the period in which Stern actually received payments from Goldberg.

Stern, however, should not profit from his misdeed in violating the covenant as a participant in the operation and management of Reliable from November 5, 1975 until the issuance of the temporary restraining order on November 19, 1975. While the restriction against Stern engaging in such business would properly have extended to May 15, 1976, the interests of justice demand that the two-week period in which Stern was in violation of the covenant be added thereto. That time having elapsed, Stern should forthwith be permitted to resume his business activity.

The trial court's finding that the defendant violated the restraining order is wholly without basis in the record. Goldberg failed to prove the involvement of Stern in a single transaction or in the management of the business of Reliable during the effective period of the order. That Stern was present for short periods of time at or about the business premises on five separate dates is surely not sufficient evidence that Stern was either competing with Goldberg or that he owned, operated or participated in the management of Reliable as prohibited by the restraining order. It was error, therefore, to extend the applicability of the restrictive covenant through December 17, 1976.

The order and judgment should be modified insofar as it enjoined defendant beyond May 28, 1976 and as so modified, it should be affirmed.

Moule, J. P., Cardamone, Simons and Mahoney, JJ., concur.

Order and judgment unanimously modified in accordance with opinion by Dillon, J., and as modified affirmed, with costs to respondent.