PRESTO–X–COMPANY, A Nebraska
Corporation, Appellant,

v.

Weldon EWING, Appellee.

No. 88–635.

Supreme Court of Iowa.

June 14, 1989.

Michael J. O'Bradovich, Council Bluffs, for appellant.

Bruce Swanson of Swanson & Boeye, Red Oak, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO and NEUMAN, JJ.

LAVORATO, Justice.

After being employed as a pest control technician for several years by the Presto–X–Company, Weldon Ewing was terminated because of his poor driving record in company vehicles. He was not given the fourteen-day termination notice provided for in his employment agreement. Ewing subsequently started his own pest control business and serviced many of the same customers who were part of his Presto–X route.

Upon learning that Ewing was servicing some of his former Presto–X customers, the company sued him for breach of the covenant not to compete in his employment agreement. Presto–X sought both temporary and permanent injunctions as well as an accounting of its lost profits. Ewing counterclaimed for the damages caused by the company's failure to give him the required termination notice.

The district court rejected Presto–X's request for the injunctions. The court also determined that the company's damages resulting from Ewing's improper solicitation of one former Presto–X customer were approximately equal to his damages resulting from the company's failure to give him a proper termination notice.

In its appeal, Presto–X argues that the district court erred in applying the restrictive covenant in the way it did, in not granting the requested permanent injunction, and in not ordering an accounting of Presto–X's lost profits. We agree. Accordingly, we reverse the district court's judgment and remand the case for entry of a permanent injunction and for determination of Presto–X's damages, including its lost profits.

I. *Background Facts and Proceedings.*

The Presto–X–Company is a pest control business with its headquarters in Omaha. It is authorized to perform its services in Iowa.

Presto–X employed Weldon Ewing beginning in March 1980, when he signed an employment agreement with the company. The agreement provided that Ewing was "to devote all his time to the solicitation and servicing of pest control contracts and accounts of [Presto–X]." The agreement also contained this restrictive covenant:

*for a period of two years after the termination of this Agreement by either party hereto for any reason whatsoever, ... [Ewing] will not, directly or indirectly, through any person, firm or corporation, solicit or attempt to solicit business from or ... perform any services or work for any customer of [Presto–X] for whom [he] shall have performed services or work at the request and order of [Presto–X] during the term of this contract or any renewal*

hereof.... [I]n consideration of the contracts and orders to be assigned to [him] pursuant to ... this Agreement, [Ewing] voluntarily accepts the restrictive covenant herein imposed. [Ewing] agrees that *violation of this restrictive covenant will subject him to injunction* to restrain such violation *and damages* resulting therefrom.

(Emphasis added.) The agreement further provided that it was terminable "by either party at any time and for any reason by notice in writing to the other party, fourteen (14) days prior to the effective date of termination."

Before working for Presto–X, Ewing had had no experience in pest control. As part of his employment, Presto–X trained him so that he could receive state certification. Following this certification, Ewing provided pest control services to a regular route of Presto–X customers. According to a company official, Ewing performed his duties satisfactorily during the seven years he worked for Presto–X.

On more than one occasion, however, Ewing had accidents and received citations while driving company vehicles. The vehicles were sometimes damaged extensively. In February 1985 the company warned that additional accidents could result in termination of his employment. Ewing had another accident in July 1987 and was terminated on that August 27, 1987.

At trial, the parties disputed whether Ewing was given the fourteen-day termination notice required under the employment agreement. The cross-examination testimony of the company official who fired Ewing seemed to settle the matter:

Q. ... Did you give a fourteen-day written notice or not? A. No.

Q. Yes or no? A. No.

This official also testified, however, that he did not order Ewing to cease work immediately on the day of the firing.

After his termination, Ewing sent a note to several customers on his Presto–X route. The note stated his name, home address, and telephone number, and then said:

Ladies and Gentlemen,

As of 9–1–87 I am no longer employed by Presto–X–Co. although I am still certified by state of Iowa. I thank you for your business throughout the past years.

/s/ Weldon Ewing

Coincidentally, on September 1, just after Ewing was terminated, Presto–X instituted a price increase for its services to these same customers. Ewing eventually began servicing several of them, including one former Presto–X customer whom he had approached in person about service.

When Presto–X learned of Ewing's new business, it brought suit against him seeking to enjoin, under the restrictive covenant of the employment agreement, his servicing of former Presto–X customers. The company also asked for an accounting of the profits it had lost because of Ewing's alleged breach of the covenant.

In his answer Ewing maintained that, among other things, he had been wrongfully discharged in that he was not given a proper termination notice, thus excusing his alleged violation of the restrictive covenant. He also contended that enforcement of the restrictive covenant would not be reasonably necessary to protect Presto–X's interests, would unduly limit his ability to earn a living, and would adversely affect the public interest. In addition, Ewing counterclaimed for the wages he lost as a result of Presto–X's failure to give him the required fourteen-day termination notice.

The district court found that Ewing's note to his former Presto–X customers was not a prohibited solicitation under the restrictive covenant. It also found that only the one instance of personal contact with a former customer had constituted improper solicitation. The court determined that Ewing's damages under his counterclaim were approximately equal to the company's damages resulting from the one improper solicitation. Accordingly, the court dismissed both Presto–X's petition and Ewing's counterclaim. The court later denied Presto–X's motions for a new trial and for enlargement of the court's findings.

In its appeal, Presto–X contends the district court erred in finding that the restrictive covenant was breached only by one

instance of solicitation, in denying the requested permanent injunction, and in not ordering an accounting of lost profits. Ewing waived the filing of an appellate brief.

Because the district court treated this case as an equity action, so do we. *See In re Receivership of Mt. Pleasant Bank & Trust Co.*, 426 N.W.2d 126, 129 (Iowa 1988) (this court's scope of review governed by how the case was tried in district court). As such, our review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the district court, but we are not bound by them. Iowa R.App.P. 14(f)(7).

## II. *Whether the District Court Erred Regarding Breach of the Restrictive Covenant.*

Presto–X argues that the district court erroneously failed to enforce the restrictive covenant as written. We agree.

As a preliminary matter, we note that the contentions Ewing made at trial, including his challenge to the reasonableness of the restrictive covenant, are not at issue in this appeal. *See Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376, 381 (Iowa 1983) ("A proposition advanced at trial but not argued on appeal is deemed waived."). In other cases, however, we have held that similar or even more restrictive covenants were reasonable and enforceable. *See, e.g., Iowa Glass*, 338 N.W.2d at 382, 383 (citing several cases in which restraints were upheld because of employee's regular contact with employer's customers, especially involving designated service areas or routes); *Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, 369, 373 (Iowa 1971) (former employee had close contact with customers; two-year restraint on competition with employer within 150–mile radius of employer's location); *Orkin Exterminating Co. v. Burnett*, 259 Iowa 1218, 1221–23, 146 N.W.2d 320, 323–24 (1966) ("route" case; three-year restraint on all competition, not limited to customers of employer, within ten miles of any location serviced for employer); *Larsen v. Burroughs*, 224 Iowa 740, 741, 277 N.W. 463, 464 (1938) (physician restrained for ten years from competing

with clinic that was former employer). For purposes of this appeal, we assume that the covenant here is also reasonable and enforceable.

Since we assume the covenant here is enforceable, the next matter of concern is whether the district court correctly applied the restraints. In our view, it clearly did not.

■ The covenant in question here prohibited Ewing from either soliciting or servicing his former Presto–X customers in any direct or indirect way. As for the soliciting issue, we disagree with the district court's conclusion that the note Ewing sent to his former customers was not a solicitation. In the note, Ewing specifically told the Presto–X customers that he was still certified in Iowa as a pest controller even though he would no longer be working for Presto–X. The note also provided the customers with his home address and telephone number, which they did not previously have. Although the note was not worded as an overt solicitation, the implication of it, we think, was that Ewing remained available for employment by the Presto–X customers and wanted them to contact him if they desired his services. If this approach to the customers was not a direct solicitation, it was at least an indirect one, and either type of solicitation was prohibited by the covenant.

■ Ewing's servicing of the Presto–X customers, which was also plainly prohibited by the covenant, is an activity the district court seemed to ignore. The court may have touched on the servicing issue indirectly when it said that "once [Presto–X's] prior customers have sought [Ewing's] services, . . . they are no longer a subject of controversy because they are no longer customers of [Presto–X]." To address the servicing provision of the covenant in this way, if that is indeed what the court was trying to do, would be to rewrite the parties' agreement in an impermissible manner.

Under the covenant, Ewing agreed that in the event of his termination, he would "*not*, directly or indirectly, . . . perform

*any services or work* for *any customer* of [Presto–X] for whom [he] shall have performed services or work" during his employment with Presto–X. (Emphasis added.) Despite what the district court said, the parties did not qualify the word "customer" with any language that suggests Ewing was allowed to work for such customers if they were to seek his services. *All* servicing of Ewing's former Presto–X customers was prohibited for two years under the covenant, regardless of who approached whom. In light of our prior holdings in this area of the law, we think the district court erred in failing to apply the servicing provision of the restrictive covenant here. *See Orkin,* 259 Iowa at 1223, 146 N.W.2d at 324 (upholding three-year restriction on *all* competition with former employer; restraint not limited to employer's customers).

In summary, we assume that the restrictive covenant here is reasonable and enforceable, and hold that the district court erred in its application of the covenant's soliciting and servicing provisions.

III. *Whether the District Court Should Have Issued a Permanent Injunction and Ordered an Accounting of Lost Profits.*

Next, Presto–X contends that the district court erred in refusing to issue a permanent injunction against Ewing as provided by the covenant and in failing to order an accounting by Ewing of the company's lost profits. We agree.

■ A. *Injunctive relief.* The granting of injunctive relief is governed by well established principles. Such relief is designed primarily to avoid irreparable damage. *Incorporated City of Denison v. Clabaugh,* 306 N.W.2d 748, 755 (Iowa 1981). As an extraordinary remedy, it should issue only when the party seeking it has no adequate remedy at law. *Green v. Advance Homes, Inc.,* 293 N.W.2d 204, 208 (Iowa 1980). An injunction should be "granted with caution and only when clearly required." *Clabaugh,* 306 N.W.2d at 755.

■ We think a permanent injunction was clearly required here. The restrictive covenant provides that "violation of [it] will subject [Ewing] *to injunction* to restrain such violation and damages resulting therefrom." (Emphasis added.) Despite the usual and proper reluctance of courts to issue injunctions, the district court should have done so in this case because injunctive relief is part of the remedy that the parties stipulated in their agreement. *Cf. Orkin Exterminating Co. v. Burnett,* 160 N.W. 2d 427, 429 (Iowa 1968) (plaintiff's right to an injunction was "founded on the restrictive covenant contained in defendant's contract of employment," even though contract contained no explicit provision for injunction).

Further, "it is clear that where there is a violation of a plain right of the [plaintiff] and [the] injury is regarded as irreparable, [the plaintiff] is ordinarily entitled to an injunction." *Orkin,* 259 Iowa at 1228, 146 N.W.2d at 327. In the present case, Presto–X's contractual right to freedom from Ewing's competition was clearly violated. And the injury to the company would be irreparable in the absence of an injunction because the customers Ewing pirated from the company would be permanently lost. The issuance of an injunction is the only way that Presto–X can be returned to the position it would have been in had Ewing not violated the restrictive covenant.

For these reasons, we hold that the district court, on remand, must issue an injunction against Ewing's further soliciting or servicing of his former Presto–X customers. The injunction shall be consistent with this opinion because, as we next explain, the terms of the restrictive covenant are not completely adequate.

Usually, an injunction such as this one would take effect on the date of the employee's termination and would continue for the length of time specified in the restrictive covenant. *See Orkin,* 160 N.W.2d at 429. In the present case, however, the two-year period of restraint, if measured from the time Ewing was terminated, will end shortly after this appeal is completed. Hence, Presto–X would actually have the

benefit of an injunction for only a fraction of the two years specified in the covenant.

We think it is necessary in such circumstances to use our equitable powers to extend the restraint period, so as to accomplish full and complete justice between the parties. *See Kriener v. Turkey Valley Community School Dist.*, 212 N.W.2d 526, 530 (Iowa 1973) (describing court's broad jurisdiction in equity cases); *cf. Ehlers,* 188 N.W.2d at 370–72 (court may modify terms of unreasonable covenant to obtain equitable result); *J.H. Goldberg Co. v. Stern,* 53 A.D.2d 246, 252, 385 N.Y.S.2d 427, 432 (1976) (former employee's restraint period extended beyond terms of covenant in "the interests of justice"). In granting injunctive relief, our goal is to impose such terms and conditions as the justice and equities of the case require. *White v. Massee,* 202 Iowa 1304, 1310, 211 N.W. 839, 842 (1927); 42 Am.Jur. 2d *Injunctions* § 301, at 1100–01 (1969). We are not restrained by the strict legal rights of the parties. *White,* 202 Iowa at 1310, 211 N.W. at 842.

Applying these principles, we hold that the injunction against Ewing shall be effective for one year from the date of this opinion. The equities of this case suggest three reasons for such an extension of the restraint period.

First, the integrity of the judicial process must be protected. Were we not to extend the restraint period, defendants in similar cases would be encouraged to inject delay into their litigation with the purpose of using up as much of the original restraint period as possible. Allowing judicial extension of the restraint period will deter delays intended for such a purpose. We have no evidence that Ewing intended any delay here, but, as noted above, the original restraint period in this case will expire shortly after this appeal. Even if Ewing did not intend any undue delay, it would be unfair for him to benefit from the normal delays of the judicial process.

Second, for the same reasons, we think a time extension is necessary to protect the usefulness of such restrictive covenants. Ewing's case is a good example of how the effective restraint period of a restrictive covenant can become sharply attenuated by delays that are either inherent in the judicial process or intended by the defendant.

Third, the extra restraint time is necessary to give Presto–X an opportunity to regain the customers it would not have lost had Ewing not violated the covenant. We have said before that when an employee has had close contact with the employer's customers, as Ewing did, "it is only fair, on termination of [the] employment, [that] there be an interval when the new employee will be able to get acquainted with the customers." *Mutual Loan Co. v. Pierce,* 245 Iowa 1051, 1058, 65 N.W.2d 405, 409 (1954) (in "route cases," restrictions on former employees are often upheld). Presto–X deserves such an interval of time here to get reacquainted with the customers it lost to Ewing. We think one year is sufficient for that purpose.

**B.** *Accounting of lost profits.* Having held that an injunction should issue, we move on to Presto–X's last contention: that the district court should have ordered an accounting by Ewing of the company's lost profits. We again agree.

Damages may be awarded in addition to an injunction in cases involving covenants not to compete. *See Orkin,* 259 Iowa at 1228–29, 146 N.W.2d at 327 (ordering issuance of injunction and determination of damages by district court on remand). "The measure of the damages resulting from the wrongful breach of [such a covenant] is the loss naturally resulting from the breach, including loss of profits." *Orkin,* 160 N.W.2d at 429.

In the present case, the restrictive covenant provided that upon its violation, Ewing would be subject to an injunction and damages. We think there is substantial evidence that Presto–X was damaged by Ewing's improper soliciting and servicing of his former Presto–X customers. We therefore remand the case to the district court for a determination of damages, which is to include an accounting by Ewing of Presto–X's lost profits. As was concluded at trial, the company's damages should

be set off against Ewing's damages resulting from his improper termination. The latter damages are not challenged in this appeal.

IV. *Disposition.*

We have concluded that this case should be remanded to the district court for the issuance of a decree enjoining Ewing from directly or indirectly, through any person, firm, or corporation, soliciting or attempting to solicit business from, or performing any services or work for, any customer of Presto–X for whom he shall have performed services or work at the request and order of Presto–X during the term of his employment with that company. This injunction shall remain in effect for one year from the date of this opinion.

On remand, the district court shall also determine Presto–X's damages, including lost profits, that resulted from Ewing's breach of the restrictive covenant. The court shall set off those damages against Ewing's.

As a final matter, we note that Presto–X's request for attorney's fees is not supported by the citation of any authority. Because we are unaware of any contractual or statutory authority for an award of attorney's fees here, Presto–X has no right to such an award. *See Norton v. Adair County*, 441 N.W.2d 347, 364 (Iowa 1989). Costs, however, should be borne by Ewing. *See Johnson v. Pattison*, 185 N.W.2d 790, 799 (Iowa 1971) (in action resulting in injunction against defendants, costs should be assessed to defendants).

For a determination of damages and the issuance of a decree as described above, we reverse and remand this case with directions.

**REVERSED AND REMANDED WITH DIRECTIONS.**

All Justices concur except HARRIS, P.J., who dissents.

HARRIS, Justice (dissenting).

I respectfully dissent. The majority concedes the employer itself breached the contract by failing to give written notice to Ewing that he was fired. This failure should preclude the employer from calling upon the court to enforce the contract. *See Felton Beauty Supply Co. v. Levy*, 31 S.E.2d 651, 654 (Ga.1944) (failure of employer to give contractually required notice precludes employer from obtaining injunction to enforce covenant not to compete); 54 Am.Jur.2d *Monopolies* § 570, at 998 (1971) (anticompetitive employment covenants held unenforceable where employer discharged employee without giving contractually required notice); Annotation, 155 A.L.R. 652 (1945). The trial court was correct in rejecting Presto–X's request for injunctions. The failure should for the same reason also preclude Presto–X from recovering damages.