■ JACOB M. LEHMAN et al., Respondents-Appellants, v SHLOMO PIONTKOWSKI, Appellant-Respondent. — In an action, *inter alia,* to enjoin defendant from violating a covenant not to compete, the defendant appeals from so much of an order of the Supreme Court, Suffolk County (Wager, J.), dated December 14, 1981, as denied his motion for summary judgment or, in the alternative, for partial summary judgment, and the plaintiffs cross-appeal from so much of said order as denied their cross application for summary judgment. Defendant also appeals from so much of an order of the same court, dated May 18, 1982, as upon reargument of his motion for summary judgment, etc., adhered to the original determination. Appeal by defendant from so much of the order dated December 14, 1981, as denied his motion for summary judgment, etc., dismissed. That portion of the order dated December 14, 1981 was superseded by the order dated May 18, 1982, made upon reargument of said motion. So much of the order dated December 14, 1981, as denied plaintiffs' cross application for summary judgment, affirmed. Order dated May 18, 1982, reversed insofar as appealed from, on the law, defendant's motion for summary judgment granted and complaint dismissed. Defendant is awarded one bill of costs. Plaintiffs commenced this action to, *inter alia,* enforce a restrictive covenant contained in an employment agreement by enjoining defendant from "practicing medicine and/or performing surgery" at the Brookhaven Memorial Hospital (the only hospital at which defendant is accredited), or within a radius of 10 miles from 485 North Ocean Avenue, Patchogue, New York, the office of the

corporate plaintiff Jacob M. Lehman, M.D., P. C. (hereinafter the corporation). The plaintiff corporation is a professional corporation engaged in the practice of orthopedics and orthopedic surgery whose sole shareholders, directors, officers and professional employees were plaintiff Jacob M. Lehman (hereinafter Lehman) and defendant Shlomo Piontkowski (hereinafter Piontkowski). Lehman began his practice in Patchogue in 1966, and organized the corporation in 1972. Piontkowski was hired by the corporation in July, 1976, at which time a contract was executed, under the terms of which Piontkowski's status was that of an independent contractor. The contract, which was to terminate on February 28, 1977, also provided, *inter alia,* that a set of agreements which the parties initialed were to become effective on March 1, 1977. These agreements included an employment contract and an amendment thereto, a stock purchase agreement and a stockholder's agreement. Subsequent to the commencement of Piontkowski's employment as an independent contractor, disagreements arose between Lehman and Piontkowski. They thereafter began negotiations regarding a series of new agreements. As a result of these negotiations, the parties executed a new stock purchase agreement on February 11, 1977 and agreed that a new employment contract, amendment thereto and shareholders agreement would become effective on March 1, 1977. The stock purchase agreement provided, *inter alia,* that Piontkowski would pay Lehman $100 per share for five shares of stock, representing a 50% interest in the corporation. One share of stock was to be sold to Piontkowski on March 1, 1977, three shares on March 1, 1979, and one share on March 1, 1980. The agreements also provided that the corporation would allocate $5,000 per year to Lehman in each of the five fiscal years commencing with the year ending February 15, 1978 and that upon a sale of his stock to Lehman or the corporation prior to March 1, 1982, Piontkowski would receive $100 per share. Lehman represented that he was the owner of the 10 outstanding shares of the corporation's stock. Under his new employment contract, Piontkowski could not be discharged without cause after March 1, 1979, although he could thereafter be terminated for several specified reasons. One basis for termination was if Piontkowski, in the opinion of the board of directors, engaged in personal misconduct, or a breach of his employment agreement, or a breach of the shareholders agreement "of such a material nature as to render his presence as an employee professionally detrimental to the other employees or to the CORPORATION". The employment contract also provided that if the board of directors made such a determination, Piontkowski had to "be given written notice in advance of termination stating the reasons for the impending termination" and also had to be given a "reasonable opportunity during the ten (10) days following such notice to rebut the evidence against him". The contract was also to terminate 90 days after receipt by the corporation of written notice by Piontkowski of his desire to resign as an employee. Piontkowski acknowledged that the stock purchase and other agreements were a result of negotiations and that they modified prior agreements. He warranted that he would not make further demands or requests to negotiate or modify these agreements and that any such demand or request might be deemed by Lehman as an offer to purchase his stock at the price of $100 per share. The employment contract provided that his employment would terminate if he sold his corporate stock. The employment contract also contained a restrictive covenant. Piontkowski agreed that if his employment were terminated, he would not, "for a period of two (2) years following termination of employment, without the written consent of the Board of Directors of the CORPORATION, within a ten (10) mile radius of any of the CORPORATION's places of business, engage directly or indirectly, as principal, agent or employee, in the practice

of medicine". The restrictive covenant provided that in the event of its breach, Piontkowski would be liable for liquidated damages of one half of the average annual gross income of the corporation for the two years preceding the termination of employment. A joint and special meeting of the stockholders and directors of the corporation was held on March 1, 1977. The minutes of that meeting recite, *inter alia,* that Piontkowski had purchased one share of stock in the corporation from Lehman, that both Lehman and Piontkowski were elected as directors and that Lehman was elected president and Piontkowski secretary. Over the course of the next several years, the corporation's income was not as great as had been anticipated and disputes arose as to the allocation of this income, specifically with respect to certain provisions of each doctor's employment contract. On June 26, 1979, following a meeting with the corporation's accountant, Piontkowski discussed with Lehman the possibility of being allocated a greater amount of compensation on an accrual basis, despite the fact that no additional sums would be available for distribution. Defendant later called the accountant, who refused the former's request to change the figures on a financial analysis. Piontkowski then asked the accountant to suggest to Lehman that his employment contract be changed so that he would become entitled to additional compensation for the fiscal year ended February 28, 1979. On June 27, 1979, Piontkowski called an employee of the corporation in charge of scheduling his surgical operations, directing her to cancel his schedule and inform his patients that he was on vacation. The next day, he told Lehman that he had canceled these operations as he was not making anything above his base salary and would actually owe a large amount of money to Lehman as part of the latter's guaranteed compensation. On June 29, 1979, Piontkowski asked another corporate employee to work for him at the new office which he planned to open the following week. On July 2, 1979, Lehman received a letter from defendant's attorney, enclosing a proposed agreement which would terminate his employment contract and waive both the 90-day notice requirement for such termination and the restrictive covenant. The letter was addressed to Piontkowski and a copy was sent to the corporation. On July 3, 1979, Lehman sent a letter, signed individually and as corporate president, to Piontkowski. The resignation was rejected with insistence upon strict performance of all provisions of the employment agreement. Lehman expressly notified Piontkowski that he had violated his contract obligations by canceling elective surgery and scheduling a vacation without permission of the president and board of directors. Piontkowski was also stated to have breached his warranty and representation that he would not demand or request to renegotiate the agreements. Lehman notified Piontkowski that he, as president, deemed these actions to be personal misconduct and breach of the employment and shareholders agreements so material as to render his presence as an employee professionally detrimental to the other employees and to the corporation. Lehman stated that the notice was without prejudice to the right to thereafter deny Piontkowski's status as a corporate shareholder. He deemed the breach of the shareholder's agreement as an offer by Piontkowski to sell his shares and he accepted the offer. Lehman enclosed a notice of shareholders meeting without conceding Piontkowski's status as a shareholder. The latter was informed that he might attend the meeting. A notice of directors meeting was also enclosed for Piontkowski's "information only". The notice of special meeting of shareholders, to be held at 6:00 P.M., on July 16, 1979, informed Piontkowski that one of the purposes of the meeting was to remove him as a director. The notice of special meeting of the board of directors, to be held one hour later, stated that a purpose of that meeting was to terminate Piontkowski's employment for cause. Following defendant's receipt of the letter and notices on July 5, 1979, he scheduled operations

beginning July 17, 1979, installed a telephone at his new office in Patchogue, and advised patients to contact him there. At the outset of the special meeting of shareholders, which had been adjourned to July 23, 1979, defendant's attorney objected to it being held, citing section 603 of the Business Corporation Law and the agreements between the parties. Following the objection, Lehman noted that he was the owner of at least six of the ten shares issued and outstanding. Lehman then moved for dismissal of Piontkowski as a director and seconded his own motion. When asked the grounds for the dismissal, Lehman's attorney stated that there need not be any, without conceding that there were no such grounds. Lehman called for a vote and voted his six shares for dismissal. Piontkowski did not vote. As a second order of business, Lehman announced that, as an individual stockholder, he deemed certain actions by Piontkowski as having breached his warranty not to make further demands to renegotiate or modify the agreements between the parties. These included: canceling elective surgery and taking a vacation without permission, seeking to lure one of the corporation's employees to work for him, obtaining a telephone for his new office and informing the corporation's patients to see him there, having his attorney send the letter seeking to renegotiate the contract and waive provisions of the same, and Piontkowski's conversations with the accountant as to increasing his compensation and with Lehman as to the fact that it would not be worthwhile for him to continue working for the corporation. Lehman then stated for the record that from the foregoing: "I individually and as a stockholder deem Dr. Piontkowski to have offered his shares for sale back to Dr. Lehman, to me, and that I accept that offer and ask that the stock record book be so noted and the stock escrowee, Mr. Weidenbaum, be so notified and that, since nothing was ever paid for those shares, I deem myself now the owner and holder of those shares". Lehman then sought to address a third order of business. Piontkowski's attorney objected to Lehman's characterization of the facts, noting that any questions as to grievances were to be submitted to arbitration. He asserted that Lehman had exceeded the scope of the notices of the meetings of shareholders and directors and that Piontkowski was not being offered a proper opportunity to reply to the charges. Lehman's counsel responded that Piontkowski could participate in the director's meeting if he chose. He also stated that the employment contract gave defendant 10 days to answer the charges, that this period had elapsed prior to July 16, 1979, and that nothing had been heard from Piontkowski. In response to further comments, defendant's attorney contended that his client had made no attempt to modify the agreements. Lehman, as "sole shareholder", then moved to nominate himself as sole director, seconded his motion, voted his shares and moved to adjourn the meeting of shareholders. He then called the special directors' meeting to order and moved to dismiss defendant as an employee for the afore-mentioned reasons. Defendant and his counsel objected to the proceedings. Lehman then informed Piontkowski that his contract was terminated as of 7:30 that night. Shortly thereafter plaintiffs commenced the instant action. The first cause of action asserted in the complaint sought to recover damages in the sum of $500,000 for breach of the restrictive covenant. As a second cause of action, they sought to enforce the covenant through the issuance of an injunction "enjoining and restraining the defendant from practicing medicine and/or performing surgery for a period of two (2) years from July 23, 1979, and within a radius of ten (10) miles from 485 North Ocean Avenue, Patchogue, New York, and from the Brookhaven Memorial Hospital". Plaintiffs alleged, as the underlying basis for relief, that they terminated defendant's employment on or about July 23, 1979 for cause and also repurchased his shares of corporate stock, both in accordance with the agreements.

Plaintiffs unsuccessfully moved for a preliminary injunction. In *Lehman v Piontkowski* (74 AD2d 841), this court affirmed the denial of such relief. Defendant thereafter moved for summary judgment, or, in the alternative, partial summary judgment dismissing the second cause of action. Plaintiffs opposed the motion, stating that the facts as alleged in Lehman's affidavit established that Piontkowski breached his contract prior to July 23, 1979 and that his dismissal as an employee for cause on that date was justified. Special Term denied defendant's motion, and, deeming plaintiffs to have requested that summary judgment be granted to them pursuant to CPLR 3212 (subd [b]), denied that request as well. Defendant thereafter moved for reargument of his motion for full or partial summary judgment. Special Term granted reargument and adhered to the original determination, although on different grounds. In affirming the denial of preliminary injunctive relief to plaintiffs, we stated that the record revealed "serious doubts as to whether the defendant's expulsion as a director of the [plaintiff] corporation, the involuntary transfer of his stock and the termination of his employment with the corporation, were proper and lawful (see Business Corporation Law, §§ 702, 708)" (*Lehman v Piontkowski, supra,* p 841). We now hold that these proceedings were improper as a matter of law. By the letter dated July 3, 1979, Piontkowski was informed that Lehman, as president, deemed the former's actions to be personal misconduct in breach of the agreements which was so material as to render his presence as an employee professionally detrimental to the other employees and to the corporation. This opinion, however, was not stated to be that of the board of directors, as was required by the employment contract, but rather was that of Lehman individually and as president of the corporation. Lehman, who was not a party to Piontkowski's employment agreement conceded that the board had not formally met to make a determination that Piontkowski had committed detrimental misconduct as a material breach of his warranty. Therefore, as the requirements of section 708 of the Business Corporation Law were not met, the letter of July 3, 1979 was of no legal effect. In support of defendant's motion for summary judgment, defendant's counsel argued that Piontkowski's acts did not meet the contractual standard of misconduct and noted that in the event of alleged misconduct, the agreements called for arbitration. Furthermore, the notice given to Piontkowski did not afford him 10 days in which to rebut the charges, as the employment agreement required. Lehman admitted that he had not conferred with Piontkowski with respect to the contents of the letter at any time between July 3, 1979 and July 16, 1979. We note that the notice of the special meeting of shareholders stated as one of its purposes the removal of Piontkowski as a director. At the meeting, Lehman attempted to dismiss Piontkowski as a director and, as the second order of business, to "purchase" Piontkowski's stock. Subdivision (a) of section 605 of the Business Corporation Law states that the notice of a special meeting of shareholders shall state the purpose or purposes for which the meeting is called. Subdivision (c) of section 602 of the Business Corporation Law states that "[a]t any such special meeting only such business may be transacted which is related to the purpose or purposes set forth in the notice required by section 605". As the second order of business was not stated to be a purpose of the meeting, said action was null and void. In any event, Lehman stated for the record that he deemed Piontkowski as having offered his shares. Lehman accepted the offer, asked that an entry be made in the stock record book and that the escrowee be notified, but claimed no need to pay for these shares. This claim was, and is, without merit. Even if Piontkowski had not paid him $100 per share Lehman would at best have a cause of action for nonpayment. He would not be allowed to cause a forfeiture, which the law

abhors. Additionally, Lehman would only be entitled to deem a demand or request for renegotiation as an offer to purchase Piontkowski's stock if there were clearly such a demand or request. As Piontkowski controverted Lehman's claim, the matter would have had to have been decided by arbitration. We also note that Lehman's first order of business at the special shareholders meeting was to vote his majority of the shares to dismiss Piontkowski as a director. Although such an act was specified as a purpose of the meeting and is one which may ordinarily be undertaken (the corporation's by-laws specifically permit the removal of a director by the vote of a majority of the outstanding shares), it was of no effect in the matter at bar. Subdivision (a) of section 702 of the Business Corporation Law provides, *inter alia*, that "[t]he number of directors constituting the entire board shall not be less than three, except that where all the shares of a corporation are owned beneficially and of record by less than three shareholders, the number of directors may be less than three but not less than the number of shareholders". The corporate by-laws, in effect, also included this statutory provision. Here, there is no question that defendant was a beneficial and record owner at the commencement of the special shareholders meeting. As indicated by the fact that Lehman used the present tense in stating that "I accept" Piontkowski's "offer" for the sale of stock, it is apparent that the sale took place during the second order of business, and after Piontkowski had purportedly been dismissed as a director. Lehman had previously called for defendant to vote as a shareholder on the dismissal motion. Piontkowski's expulsion as a director and the election of Lehman as the sole director were therefore improper as a matter of law. The removal of Piontkowski as a director left the corporation with only one director and, concomitantly, without a validly constituted board of directors. Subdivision (a) of section 702 of the Business Corporation Law prohibits such an occurrence. The subsequent act of an illegally constituted one-man board of directors in terminating Piontkowski's employment was invalid. As the proceedings which effected defendant's unilateral expulsion from the corporation were illegal and invalid, plaintiffs are not entitled to enforce the restrictive covenants contained in defendant's employment contract (cf. *Post v Merrill Lynch, Pierce, Fenner & Smith,* 48 NY2d 84, 88-89; *Cornell v T. V. Dev. Corp.,* 17 NY2d 69, 75; *Borne Chem. Co. v Dictrow,* 83 AD2d 595, 597). In any event, the employment contract specifically provided that the duration of the restrictive covenant was for a period of two years and the complaint sought to enjoin defendant from the practice of medicine within the specified area for a period of two years from July 23, 1979. As that period has already expired, plaintiffs would have been limited, were we not granting summary judgment to defendant, to the other remedy provided by the contract, i.e., liquidated damages (cf. *Goldberg Co. v Stern,* 53 AD2d 246, 251-252). Mangano, J. P., O'Connor, Brown and Boyers, JJ., concur.